# CHARLESTON.

WOOD & BROOKS CO. *v.* D. E. HEWIT LUMBER CO.

Submitted October 4, 1921.    Decided October 18, 1921.

1.  SALES—*Written Offer to Purchase Lumber Does Not Become Contract Until Accepted.*

    An offer in writing to purchase lumber to be manufactured and delivered by the offeree, not signed by him, does not become a contract until he accepts it.    (p. 257).

2.  SAME—*Acceptance Need Not be Actual, But is Inferable from Conduct.*

    Acceptance to enlarge such an offer into a contract need not be actual, it may be inferred from the acts and conduct of the offeree in respect thereof.    (p. 257).

3.  Same—*Shipment of Lumber Pursuant to Offer.*

A partial and reasonably prompt shipment by the offeree of more than half of the quantity and quality of lumber purchased for delivery, and delivered to and accepted by the offeror, pursuant to the terms and conditions of the offer, amounts to an acceptance by the offeree.  (p. 260).

4.  Frauds, Statute of—*Performance of Part of Offer of Sale Held Not Sufficient to Obviate Inhibition of Statute.*

Performance in part of an offer to purchase lumber to be manufactured and delivered by the offeree as required by the offer, when not signed by the offeree, is not sufficient to obviate the inhibition of the statute of frauds, clause 7, chapter 98, Code.  (p. 259).

5.  Same—*Contract in Writing Not Signed as Required Not Inhibited Unless it Appears Therefrom That it Does Not Permit of Performance Within Year.*

Clause 7, chapter 98, Code, does not inhibit an action based on a breach of a contract in writing, not signed by defendant, as therein specified, unless it should appear from the terms and conditions thereof that the contract does not admit of performance within a year from its date.  (p. 258).

6.  Same—*Written Offer to Purchase Lumber Held Not Within Statute.*

Where a written offer bearing date in October, to purchase lumber of a prescribed quantity and quality to be manufactured by the offeree in the ensuing winter months for delivery during the following summer, it is not within the inhibition of clause 7 of the statute of frauds, chapter 98, Code.  (p. 258).

7.  Sale—*Evidence of Acquiescence in Delay Held Competent in Action for Breach.*

Where a contract for the purchase of lumber to be manufactured and delivered by defendant within the time and upon the terms and conditions therein specified is breached by him a few years after the expiration of the time limit, each of the parties thereto acquiescing in the delay during such period, the statutory limitation not applying and plaintiff, though diligent, was unable to purchase lumber of the kind and character prescribed in the contract within the year the breach occurred, for delivery that year, but could and did purchase it for delivery the next year, the evidence showing the facts to be as stated was competent and justifiable.  (p. 263).

8. FRAUDS, STATUTE OF—*Postponement of Completion Acquiesced in Does Not Prevent Plaintiff's Suing for Breach, Where Full Performance within Year was Possible.*

Postponement of the completion of a contract concurred and acquiesced in by the parties thereto does not affect the right of the plaintiff to sue for its breach, where full performance within a year from its date was possible, and the parties contemplated compliance within that time. (p. 263).

9. CONTINUANCE—*Defendants Motion Because of Amendment of Declaration was Properly Rejected Where Not Showing How he Might be Prejudiced.*

A motion for a continuance, predicated upon an amendment of a declaration to admit proof introduced by plaintiff during the early stages of the trial, properly is rejected where defendant, although objecting to the amendment, proceeds with the trial without showing in what respect, if at all, he is likely to be prejudiced by a continuation of the trial thus begun. (p. 266).

10. CONTRACTS—*Where Evidence is Conflicting as to Existence of Contract, Question is for Jury.*

Where plaintiff affirms and defendant denies the existence of a contract binding upon both of them, and each introduces evidence upon that phase of the controversy, consisting of letters and acts and conduct of the parties pertaining thereto, thereby producing a conflict, the question of the existence of such contract is for the jury to determine, and an instruction submitting that question to them for determination is not erroneous when properly prepared. (p. 267).

Error to Circuit Court, Cabell County.

Action by Wood & Brooks Company against D. E. Hewit Lumber Company. Verdict for plaintiff set aside, and plaintiff brings error.

*Reversed, verdict reinstated, and judgment entered for plaintiff.*

*L. L. Wilson* and *Geo. S. Wallace,* for plaintiff in error.
*Fitzpatrick, Campbell, Brown & Davis,* for defendant in error.

LYNCH, JUDGE:

The trial court set aside a verdict for plaintiff in an action for damages for a breach of an alleged contract, in the form

of an order, for the sale and delivery of lumber, the order being as follows:

> Wood & Brooks Co.,
> Ontario St., Buffalo, N. Y.,
>
> Oct. 18, 1915.

D. E. Hewit Lumber Co.,

Huntington, W. Va.

Please enter our order for the following:

Ship:  N. Y. C. & St. L.

Via:  Ship to Black Rock Station, Buffalo, N. Y.

500,000 feet 5-4 basswood, white No. 1 common and better, all white one face 80% white the other, suitable for piano keys, subject to our inspection at point of shipment.

Price $39.00 delivered Buffalo, 2% cash 10 days from receipt of car. 1916 delivery.

If you can not deliver as ordered, please advise us immediately.

> WOOD & BROOKS COMPANY,
> Per. N. R. Luther.

Defendant below and in error neither signed nor formally accepted the order, and for these and other reasons denies liability on the grounds that if the order be a contract it does not on its face require performance within a year from its date, wherefore it is void under clause 7 chapter 98, Code. The order considered apart from the correspondence between the parties to the action, and their acts and conduct respecting the transaction may be subject to the criticism urged against it.  While it requires delivery in 1916, the requirement could have been fulfilled after October 18 of that year.  But the correspondence throws light upon the intent of the parties as to the order.

It is an offer to purchase basswood timber, and if accepted directly or inferentially it becomes a binding contract to deliver the timber called for, whether signed or not signed by the offeree, if viewed in the light of the subsequent correspondence, the acts of the parties, and the usages and customs

of business of that character there is disclosed an intention on the part of each of them to comply with its terms. If the contract could have been performed within a year from its date, it is not within the terms of the statute.

Decisions construing the statute show a tendency to limit its application to contracts which can not by a reasonable and fair interpretation admit of performance within a year, *Franklin Sugar Co.* v. *Taylor,* 37 Kan. 435; cases cited 25 R. C. L. 454, or in which it affirmatively appears that performance can not be had within that time. *Walker* v. *Johnson,* 96 U. S. 424.    Our authorities sustain and strengthen this view, "An oral contract which may, in any possible event, be fully performed according to its terms within a year, is not within clause 7 of the statute of frauds," *McClanahan* v. *Otto-Marmet Coal Mining Co.,* 74 W. Va. 543; and "A verbal contract the terms of which do not expressly provide for performance beyond a year or by fair and reasonable construction contain anything inconsistent with complete performance within that time, is not within the statute of frauds." *Reckley* v. *Zinn,* 74 W. Va. 43.

As plaintiff's letter of October 18, 1915, that also being the date of the order, contains nothing which indicates that more than a year is to be required for completing the contract, and as A. M. Hewit, the secretary and treasurer of the defendant company, admits that the quantity of lumber to be furnished was a small order, or as he says, not more than 6% of the annual capacity of the defendant's plant, and that the quantity could have been cut and shipped before the summer of 1916, the contract could not be considered as one necessitating more than a year for its performance.

The fact that because of a series of delays, more or less willingly acquiesced in by plaintiff, the deliveries were as a matter of fact continued for more than a year is immaterial; it is the fact that the contract could have been performed within the necessary twelve months that carries the contract without the statute. *Ford Lbr. & Mfg. Co.* v. *Cobb,* 138 Ky. 174 S. W. 763; *Van Woert* v. *Albany & S. R. Co.,* 67 N. Y. 538; *Reyniek* v. *Allington & Curtis Mfg. Co.,* 179 Mich. 630, 146 N. W. 252.    Nor does the statute apply to an

obligation not in writing to pay money, though payment is not to be made within one year. *Rake's Adm'r* v. *Pope*, 7 Ala. 161; *Reed* v. *Gold*, 102 Va. 37, 45 S. E. 868; *Hodgens* v. *Shultz*, 92 Ill. App. 84; *Dant* v. *Head*, 90 Ky. 255, 13 S. W. 1073, 29 A. S. R. 369.

It is urged by defendant that the parties by the order and correspondence manifested an intention to extend performance over a time exceeding the statutory period. Neither the offer nor defendant's letters warrant such construction, as the former construed in connection with the acts of defendant rather evince a purpose to consummate the sale within the twelve months. In fact Mr. Hewit in his letter of September 7, 1916 admits that such was his intention, but this feature we regard as indecisive. "Intention or expectation of the parties is immaterial." *McClanahan* v. *Otto-Marmet Coal & Mining Co.*, cited. All the cases cited by defendant to sustain its contention seem to involve contracts which on their face have their performance postponed beyond a year. Such contracts are of course within the statute. 3 Minor's Inst. (2nd. Ed.) 196.

That the sufficiency of the memorandum may be gathered from letters and writings and not from parole evidence is well settled, *Rahm* v. *Klerner & Sons*, 99 Va. 10, 37 S. E. 292, but it is equally true that an offer in the form of a letter and an acceptance in like form may, if each refers to the same subject, be sufficient to constitute the writing called for by the statute. 2 Page, Contracts, Sec. 1321; Smith, Law of Frauds, p. 566. In defendant's letter last referred to, written some three months after the first of several shipments of timber in June, 1916, pursuant to the order, appears the following clause: "When we took this order for 500,000 feet we expected to cut that much this year." This letter, properly signed by defendant, is strongly suggestive of a completed memorandum.

Defendant's statement that part performance does not take a contract out of the statute seems quite correct, the law on that point being very well presented in a monographic note appended to *Diamond* v. *Jacquith*, L. R. A. 1916 D, 880 at 886, as follows: "The rule that part perform-

ance will prevent the operation of the statute so far as performance has gone, can, by the nature of things, have no application to actions for breach of contract. In such actions recovery is based not upon what has been done under the contract, but upon the loss accruing from what has not been done. Therefore, even in jurisdictions which have adopted that rule, there can be found no ground upon which to base a right of recovery for the breach of a contract not to be performed within a year." Many cases are there cited in support of this rule. But the principle thus stated has no application here, because plaintiff has not found it necessary to rely, and has not relied upon part performance as taking the case out of the express provisions of the statute. Performance in part only reenforces the conclusion predicated upon writings passed between the parties touching the matter out of which the litigation has arisen.

The proposal was to buy basswood timber for 1916 delivery, and as such it was a valid offer to purchase, and the acts of defendant in cutting and shipping part of the timber, viewed in the light furnished by the written correspondence, constituted an effective acceptance or ratification of the offer. They thereby satisfied the requirements of the statute and defendant is liable for any loss sustained by plaintiff by non-compliance with its terms.

One contention of defendant is (page 11, brief) that no contract was ever consummated, and that any subsequent shipments of timber were by virtue of later understandings. This argument is founded upon the theory that an offer to ripen into a contract must be accepted within the time specified, and if no time is specified, then within a reasonable time, with the further contention that the offer was not accepted within a reasonable time, and that its acceptance having been delayed indefinitely there could be no assent to its terms and no agreement to perform its obligations. So far as defendant's exposition of the law is concerned it seems correct. *Hanly* v. *Watterson*, 39 W. Va. 214; 1 Page Contracts, Sec. 139, cases cited, note 5. In the application of these principles, however, defendant appears to stress too heavily the failure on his own part to immediately notify

plaintiff of his assent to the offer. While there has been some practical difficulty in applying the doctrine, courts have generally, though not universally, held that an offer to buy becomes a binding agreement when the offeree performs an act from which acceptance may be implied. 35 Cyc. 52; *Colgin* v *Hanly*, 6 Leigh (Va.) 85. It follows, therefore, that since plaintiff's offer prescribed no specific form of acceptance, it may be implied from conduct as well as from words. 1 Page, Contracts, Sec. 188; Clark, Contracts, p. 24.

The record shows that defendant notified plaintiff by letter, dated April 3, 1916, that 12 cars of basswood were ready for shipment, and desired that the inspector, Mr. Pratt, be sent down from Buffalo to pass upon its quality. As plaintiff did not want the wood so early in the season, the inspector was not sent at once, for which reason the first car was not shipped until June 14, between which time and June 24, 9 cars, containing 160,490 feet of timber were delivered to the carrier and later accepted by plaintiff. Such unqualified act on the part of defendant was surely sufficient to indicate to plaintiff an intent to perform the contract according to its terms. The law is settled that the shipment of a part of an order of goods is an acceptance of the whole order. 1 Page, Contracts, Sec. 156; *Monarch Portland Cement Co.* v. *Creedon,* 94 Neb. 185, 142 N. W. 906. It was shown in the proof that it is customary to cut the timber in the winter when there is no sap in the trees, and ship the lumber in the following summer. That such was the custom defendant knew, and plaintiff relied on it, as appears by the letter of April 7, 1916, in which it is stated: "We shall not accept any basswood from anyone until the month of June, which is none too late for it to have dried out properly for shipment." Shipments prior to the spring or early summer of 1916 would seem under such circumstances and usage to have been unusual and unwarranted. It seems, therefore, that the shipments made, even without any notice to the buyer are, to say the least, strongly indicative of an intention to effectuate a valid acceptance of the offer. 35 Cyc. 55, cases cited. As stated in Page Contracts, Sec. 156, decisions which reach different results are generally founded on differences in the

wording of the orders, trade usages, or other circumstances not present here.

There is an additional circumstance to be considered in this connection which strengthens plaintiff's position, and that is the statement in its letter of October 18, 1915, as follows: "If you can not deliver as ordered, please advise us immediately." While it is a general rule of law that acceptance may not be inferred from mere silence, such silence under some circumstances may be taken as some evidence of assent. Particularly is this true in case the offer states that acceptance will be assumed in case there is no reply. While plaintiff's request for a reply in case delivery was impossible does not say that acceptance would be assumed, it is possible that defendant may mave regarded it in that light. In view of this circumstance, the former dealings between the parties, the custom of the trade to deliver no basswood during the winter months, it was reasonable that plaintiff should have recognized that defendant's silence might possibly have meant an assent. On this subject see Williston, Contracts, Sec. 91 A.

At any rate, it is apparent that plaintiff, when accepting the timber shipped, regarded the offer as in force, and that, according to a recent English decision (1913) is evidence upon the question. *Morrell* v. *Studd & Millington,* 2 Ch. Div. 648.

Plaintiff's right to recover for the loss sustained because of defendant's failure to deliver lumber of the character described in the order, and at the time and place therein specified, is strengthened further and in effect conclusively by the admission of both plaintiff and defendant that they intended the order to be filled within a year from its date, and that it could have been filled within that time. Such being their intentions with respect to performance, defendant's ability to perform within a year, and its performance in part within that time considered in connection with all the facts and circumstances developed by the proof, including the correspondence, put the contract beyond the operation of the statute.

Defendant professes to perceive serious error in the jury's

assessment of damages carried into the verdict.   As the position so taken involves various aspects of the facts presented, a further review of the record is necessary.

Plaintiff's original offer contemplated prompt delivery of the basswood lumber.   As a matter of fact, only 160,490 feet were shipped in 1916, and by letter dated September 7, of that year, Mr. Hewit advised plaintiff that although he had expected to cut the full 500,000 feet "this year", labor troubles·had so far retarded the progress of defendant's work that it had been impossible to reach that boundary of timber wherein defendant's basswood was located.   This explanation he followed by a reminder that basswood had advanced several dollars in price, and concluded: "We hope you will not compel us to furnish stock next year at these old prices on the last year's contract."   On September 19, plaintiff replied, denying a charge of defendant that they were paying higher prices to other people for basswood, expressing some dissatisfaction that defendant had not shipped a larger quantity during the year, and insisting upon completed performance during 1917.   Defendant answered: "We will let the order stand as it is and cut all the 5-4 basswood we possibly can on your order."   These letters are the best evidence of the understanding of the parties in regard to the contract during 1917.   True, several letters were exchanged in January, but those of the plaintiff merely expressed disappointment at defendant's failure to give more definite information as to the amount of lumber of the kind ordered plaintiff might expect during the year, and those of defendant explained the impossibility of forecasting the quantity accurately.   The letters of March and April dealt principally with the details of shipment of the 1917 deliveries and the dispatching of Mr. Pratt to inspect the lumber, preparatory to its shipment.   Defendant's letter of July 3, however, besides advising plaintiff that 4 cars were ready for shipment added "this will be all we will have this year."   Plaintiff's reply of July 6 again expressed disappointment at the small quantity shipped and concluded: "Perhaps you are planning to cut it in the coming season instead, will you please advise us immediately concerning this?"   Defendant, in ans-

wering this letter three days later, ignored this inquiry, and nothing further passed between the parties as to the continuance of the contract until April 6, 1918, when plaintiff wrote, asking when defendant desired Mr. Pratt to inspect the lumber and how much of it would be shipped during the season. Defendant replied on April 18, just eight months after the last car was shipped, stating that all lumber was being sold to the government, and that "You must realize that we could not ship lumber to-day at prices made in 1915." This, we believe, was the first intimation plaintiff had that defendant did not contemplate shipping all of the basswood called for in the order. From this time forward plaintiff was at liberty to consider the contract breached by defendant. As appears from the testimony of Mr. Luther, secretary of the plaintiff company, he "immediately got busy and made inquiries at Michigan, Indiana, West Virginia, Virginia and Wisconsin for quotations on specifications, the same as in this order to the D. E. Hewit Lumber Company." This effort on his, part was fruitless until July, at which time the best market price obtainable was $60.00 and $62.00 per thousand, delivered in Buffalo, 1919 delivery. Plaintiff's damage, as found by the jury, was based upon the difference between $39.00 per thousand, the price named in plaintiff's order, and the quotation of $60.00 and $62.00, just referred to. Defendant urges insistently that this was an improper measure of damage, first, because the contract was breached not in April 1918, but on July 3, 1917, when defendant advised plaintiff that 4 cars would "be all we will have this year," and, second, because the quotation of $60.00 and $62.00 covered not 1918 but 1919 delivery.

As to defendant's first contention, it is to be noted that by the terms of the original offer all of the basswood was to have been delivered during 1916; only a part was shipped, however, and plaintiff's secretary, though disappointed, acquiesced in the delay. Five cars were shipped during April, 1917, and in July plaintiff received the letter relied upon by defendant as a repudiation of the contract. This letter, properly interpreted, is not sufficient to justify the conclusion insisted upon by defendant. Its plain import is that

4 cars would be all defendant "will have this year." It omitted the excuses or explanations contained in the correspondence of the preceding year, but falls far short of the "unequivocal and absolute" renunciation of the contract which the law requires. *Bannister* v. *Victoria Coal & Coke Co.*, 63 W. Va. 502, 61 S. E. 338; Elliott, Contracts, Sec. 2032. In view of this circumstance, the evidence introduced by the defendant as to the market value of basswood in 1917 does not affect the issue.

The general statement of the law in regard to damages in cases of this character, as recently set forth by this court, is as follows: "For breach of contract for the sale of personality, by non-delivery of the property, the measure of damages ordinarily is the difference between the contract price and the market value of the articles at the time and place specified for delivery." *Wilson* v. *Wiggin,* 77 W. Va. 1, 87 S. E. 92; and where no specific time is fixed for delivery the market value will be estimated as of the time of the refusal to deliver, Sutherland, Damages (4th. Ed.) Sec 651; 5 Elliot, Contracts, Sec. 5108; *Guice* v. *Crenshaw*, 60 Tex. 344; *Summers* v. *Hibbard,* 153 Ill. 102, 111, 46 A. S. R. 872; and the same rule applies where delivery is postponed from time to time, Sedgwick, Damages (9th Ed.) Sec. 737; *Roberts* v. *Benjamin,* 124, U. S. 64. Defendant contends, however, that although the breach may have occurred in April, 1918, proof of the market value in July for 1919 delivery is not a proper basis for recovery. Such position is without proof to sustain it. While it is quite true that the buyer in such a case must act with promptness in obtaining goods to replace those undelivered, (*David* v. *Whitmer & Sons,* 46 Pa. Super. 307) the evidence shows that diligent efforts were made at once to secure quotations on basswood of the character specified in plaintiff's offer, and although inquiries were directed to dealers in several states, plaintiff obtained no definite answers until July, when, according to Luther, the lowest price then obtainable was for 1919 deliveries. Certainly this circumstance in no way prejudices defendant's rights in the controversy. Investigation discloses several cases in which the agreement related to property not to be found in the market,

and in such cases it is held that if the course pursued by the purchaser in obtaining other like property was the only way it could be obtained, or was a reasonable or prudent way of obtaining it, the difference between the contract price and the higher cost of the property thus obtained may be recovered by the purchaser as damages naturally arising from the breach itself. Sutherland, Damages (4th. Ed). Sec. 625, cases cited. In our judgment plaintiff's conduct fully satisfied this test and we find no error in the damages as found by the jury.

The refusal to grant defendant a continuance after plaintiff was permitted to amend the first count of the declaration during the progress of the trial is complained of. As has been pointed out, plaintiff's theory of the case is that, as plaintiff acquiesced in delays in the fulfillment of the contract, it was extended beyond the time fixed in the original offer. In order to establish this proposition, plaintiff offered as evidence, and filed as exhibits many letters exchanged between the parties, some of which have been referred to.

Immediately upon their introduction, defendant moved to strike from the evidence any letter after the year, 1916, which tended to prove or show any continuation or modification of the contract. The legal foundation for this motion, according to defendant's brief, lay in the fact that the two counts of the declaration alleged the purchase of the lumber specified in the order for 1916 delivery, and that, therefore, the letters, to whose admission it objected, were foreign to the case. At this point, counsel for the plaintiff asked leave to amend the declaration in order to show that by mutual consent the contract was carried through the years from 1915 to 1918. The leave the court granted and the declaration accordingly was amended, and to this action defendant excepted, and moved for a continuance upon the ground of lack of preparation on its part to show the market price after 1917, which motion the court overruled and the defendant again excepted.

Section 8, chapter 131, Code, authorizes amendments of a pleading when necessary to warrant proof offered and admitted, to the end that substantial justice may be promoted,

and to grant a continuance should good cause therefor be made to appear.   In the statute there is no language to warrant the statement sometimes expressed that the defendant is entitled to a continuance "as a matter of right," nor do our decisions so hold.   *Koehn* v. *Fairmont Brewing Company,* 69 W. Va. 94; *Adams* v. *Adams,* 79 W. Va. 546.   These decisions are conclusive that cause satisfactory to the trial court must be shown.   As in the Adams case, the amendment did not affect the merits of the action, nor did the proof thereunder introduce any element in the case which the defendant might not have anticipated under the original declaration, which did not purport to fix the date of the breach. No doubt the same witnesses called in by defendant to prove the market value of basswood during 1917 were as well qualified to testify as to its value during the succeeding year. The necessity of a continuance was not made apparent to the trial court, nor do we see any.

The right of the plaintiff to benefit by the language used in his instruction No. 1 is questioned by defendant on the theory that it submits to the jury the existence of a contract between the parties as of October 18, 1915, when as the truth is, it was the duty of the court to determine that fact, if fact it was, and for this proposition *E. T. Barnum Iron Works* v. *Prescott Construction Company,* 86 W. Va. 173, is cited.   In that case, however, the contract upheld and enforced depended entirely upon the correspondence between the parties, as the opinion shows. Here there were letters, it is true, but they are inconclusive unless they are construed in conjunction with other facts and circumstances found in the record, and as there is some conflict as to their effect upon the issue involved, the jury is the proper body to find a solution for the conflict.

The rule laid down in 13 C. J. 782, also cited in the Iron Works case, supra, is this: "But where letters introduced in evidence by plaintiff in proof of the contract sued on do not constitute in themselves a completed contract, but merely negotiations with a view to a contract, as they are supplemented by oral testimony, it is proper to submit to the jury the question whether it was in fact completed," and to sup-

port the rule so stated, the author cites *Harvard Pub. Co.* v. *Syndicate Pub. Co.,* 36 C. C. A. 470, 94 Fed. 754; *Crossly* v. *Summit Lumber Co.,* 187 S. W. 113; (Mo. App. 1916); *Dougherty* v. *Briggs,* 231 Pa. St. 68, 79 Atl. 924. These citations sustain the text quoted, and the rule is especially applicable to the question here considered, relating, as it does to defendant's acceptance or non-acceptance of plaintiff's order, that of course being a question for the jury to settle as held in each of the cases last cited, and also in *Camp* v. *Wilson,* 97 Va. 265. This instruction, therefore, was not improperly given.

So far as it is encumbent upon us to enter upon a discussion of other instructions requested by plaintiff, it is only necessary to refer to what has been said on the subject in other connections. The order to be entered here, pursuant to this opinion, will be to reverse the judgment of the circuit court, reinstate the verdict, and enter judgment thereon, and award to plaintiff the costs expended by him in that court and here.

*Reversed, verdict reinstated, and judgment entered for plaintiff.*