# CHARLESTON.

DUQUESNE LUMBER COMPANY *v.* KEYSTONE MANUFACTUR-
ING COMPANY.

Submitted March 1, 1922.    Decided March 14, 1922.

1. CONTRACTS—*Acceptance of Order Sent by Dealer to Manufacturer and Statement of Letter that he will Fill Same if Given a Chance and Other Conduct of Parties so Indicating may Make such Order Basis of Valid Contract.*

    Acceptance of an order sent by a lumber dealer to a manufacturer of lumber may be inferred from conduct of the parties consistent only with the view that the said order constitutes a contract between them, such as the shipment of materials upon the order, statements by the seller that he will fill the same if given a reasonable chance, and other conduct indicating that the parties consider the order the basis of a valid and binding contract.  (p. 674).

2. SAME—*Executory, Breach of—Difference Between Contract Price and Market Price at Time and Place of Delivery as the Measure of Damages.*

    Ordinarily the measure of damages for the breach of an executory contract of sale of personal property is the difference between the contract price and the market price at the time and place of delivery.  (p. 679).

3. SAME—*Executory, Breach of—Difference Between Contract Price and Market Price at Time of Seller's Refusal to Execute Contract the Measure of Damages.*

    Where there is no time fixed for the delivery of goods sold under an executory contract, the measure of damages to which the buyer is entitled, upon the seller's refusal to execute the contract, is ordinarily the difference between the contract price and the market price at the time of such refusal.  (p. 680).

4.  SAME—*Executory, Breach of, by Seller of Personal Property—*
    *Buyer who purchases Other Goods in Place of Those not*
    *Delivered a Long Time After Breach not Entitled to Re-*
    *cover Difference Between Contract Price and That Paid*
    *Unless Price Paid was Same as Market Price at Time and*
    *Place of Delivery or at Time of Breach.*

    Where the seller of personal property under an executory
    contract refuses to perform the contract in accordance with
    its terms, and the buyer purchases goods in the market to
    take the place of those not delivered under the contract, a
    long time after the breach thereof upon the part of the seller,
    he is not entitled to recover the difference between the con-
    tract price and the price so paid by him in the absence
    of a showing that the price paid was the same as the mar-
    ket price at the time and place of delivery, or at the time
    of the breach, or that he in good faith promptly endeavored
    to procure the goods to take the place of those sold to him
    and not furnished, but was unable to procure the same in
    the market earlier than he did purchase them.   (p. 680).

Error to Circuit Court, Randolph County.

Action by Duquesne Lumber Company against Keystone
Manufacturing Company.   Judgment in favor of plain-
tiff for damages for alleged breach of contract, and defend-
ant brings error.

*Reversed and remanded.*

*Samuel T. Spears* and *C. O. Strieby,* for plaintiff in error.
*Simon Patterson, S. L. Reger* and *D. H. Hill Arnold,* for
defendant in error.

RITZ, JUDGE:

The defendant by this writ of error seeks reversal of a
judgment against it for damages for the alleged breach of
a contract of sale of certain lumber by it to the plaintiff.

The plaintiff is a dealer in lumber with offices in Pitts-
burg and Philadelphia, Pennsylvania, and the defendant is
a manufacturer of lumber with its principal place of busi-
ness at Elkins, West Virginia.   Prior to the time of enter-
ing into the contract or contracts involved in this litigation
the parties had had some dealings, and there were at that
time some orders for lumber given by the plaintiff to the

defendant, and by it accepted, which remained unfilled. These were for a different character of lumber, however, from that involved in this case. It appears that in the month of August, 1916, the plaintiff sent to the defendant an order for 50,000 feet of 4 in. x 10 in.—12 ft. sound and square edge beech, birch and maple, at the price of $22.00 per thousand. This order was accepted by the defendant. Almost at the same time another order was sent by the plaintiff to the defendant for 100,000 feet of the same material. Upon the receipt of this latter order the defendant wrote to the plaintiff advising that it had received the order, but that it could not accept the same unless it was given permission to ship certain other material which had been theretofore ordered, but for which shipping directions had not been given, but advised that if the plaintiff would get shipments of this material going again it, the defendant, would accept the order. In response to this letter the plaintiff wrote to the defendant that it did not know why the shipments of the other material were being held up, but that it would take the matter up with its Pittsburg office. It does not appear just what was done by either party in regard to having the shipments made upon the other orders upon which the defendant's acceptance of the 100,000-foot order depended, but it does appear that during the month of September and October considerable of the class of material specified in the other order was shipped by the defendant to the plaintiff and accepted by it. The order for 50,000 feet, above referred to, was to be shipped between September 15, 1916, and October 15, 1916, and the order for 100,000 feet was accompanied by a letter in which the defendant was advised that the material was desired for November deliveries, and that no shipment should be made after October 15th. Upon these two orders aggregating 150,000 feet the defendant shipped to the plaintiff about 57,000 feet, and upon defendant's refusal to make further shipments the plaintiff purchased the material from other sources, and brought this suit to recover the difference between the contract price and the price it was required to pay for the material when it purchased the same.

The defendant insisted that the plaintiff was not entitled to recover for the reason that it had never accepted the order for 100,000 feet, and had more than filled the order for 50,000 feet which it had accepted; that even though it had unequivocally accepted both orders, the failure to ship the same was due to the failure of the plaintiff to obtain permits upon which the shipments could be made; and it further insists that the judgment rendered herein must be reversed and the verdict of the jury set aside, even though it be found that it had accepted the orders, and that the plaintiff was not in fault in procuring the permits upon which to make the shipments, for the reason that no proper measure of damages was proven upon which the jury's verdict can be based.

That the order for 100,000 feet of lumber was not accepted at the time it was sent to the defendant is clearly shown by its letter introduced in evidence, but the plaintiff insists that the defendant's subsequent conduct shows that it treated the conditions stated in the letter in regard to the shipment of other material as having been complied with, and the order as constituting a contract binding as to it.     It appears from the evidence that the shipments made of the class of material included in these two orders were indicated as being made on either one or the other of the orders indiscriminately, and that when the shipments began both of the parties really treated the two orders as one, sometimes indicating the shipment as on one of them, and sometimes on the other.     It also appears that during the time these shipments were being made the defendant wrote a letter to the plaintiff advising it that it had accepted orders for more of this material than it had really intended, but that if it was given a chance it it would fill the same.     The evidence upon the question of the acceptance of the orders, we think, was properly submitted to the jury, and justifies a finding that the defendant by its conduct in the handling of this business had accepted not only the order for 50,000 feet, but the one for 100,000 feet as well.

There is some contention as to whose duty it was to procure permits for the shipment of this material.     The material was to be shipped to New York City within the light-

erage limits.    On account of the congested condition of rail-
road transportation at that time the railroads were   only re-
ceiving shipments upon special permits authorizing their re-
ceipt. Whatever may be the evidence as to whose duty it was to
procure these special permits there does not seem to be much
doubt but that permits were secured by the plaintiff for every
shipment which the defendant had to make. In fact it is
shown that about the time these shipments should have been
forwarded the plaintiff procured a permit for 15 cars, which
was more than sufficient to cover all of the 150,000 feet,
which permit was in effect until the first of November, 1916,
at which time it was cancelled by the transportation com-
panies.    If the defendant had shipped the material within
the time mentioned in the orders it would have had all of
these orders filled before the cancellation of this permit, but
it sufficiently appears that the plaintiff knew of the defend-
ant's inability to comply with the terms of the orders so far
as making shipments within the time therein provided is con-
cerned, and did not insist upon this condition.    Upon the
state of the evidence we think that a finding by the jury
that the plaintiff had performed its duty so far as obtaining
shipping permits is concerned would be justified, and we
could not disturb the verdict upon that ground.

The ground most relied upon by the defendant is that
there was no proper evidence of damages, and that even
though it be conceded that the defendant was guilty of the
breach of the contract claimed, the plaintiff would only be
entitled to recover nominal damages.    As before stated, it
sufficiently appears that all of this lumber was to have been
shipped before the first of November, but we think it also
sufficiently appears, and the parties substantially agree, that
the time within which the shipments were to be made was
extended by the conduct of the parties; or, to express it in
another way, neither party took advantage of the limitation
of time within which the contract was to be performed.    On
the 5th of December the defendant wrote a letter to the
plaintiff advising that it then had on hand two carloads of
material to be shipped on these orders, and that because of
the delays in getting cars and in getting permits these two

cars were all it would manufacture to be shipped under the
contract; and it insists that if it was guilty of a breach of
the contract this breach was complete with the receipt of
this letter announcing its unequivocal refusal to furnish
further material upon the orders except the two cars it then
had on hand. These two cars were subsequently shipped
and are included within the total of 57,000 feet above refer-
red to. The plaintiff upon receipt of defendant's letter de-
clining to make further shipments insisted that the defend-
ant must fulfil its contract; that it, the plaintiff, had sold the
lumber, and must have it to meet its engagements, and that
unless the defendant did furnish the material upon the order
it would have to buy it in the market and pay the price then
demanded by the dealers furnishing such material. The de-
fendant uniformly replied to these letters refusing to make
any further shipments, and finally on the 26th of Decem-
ber, 1916, after having a conversation with an agent of the
plaintiff, wrote it in effect that there was no use communicat-
ing any further about the matter; that it did not intend
to ship any more lumber on the orders. After this time
it does not appear that the plaintiff again wrote to the de-
fendant in regard to these shipments until the month of
June, 1917. There is some evidence indicating that an agent
of the plaintiff, at various times between December and
June, called the attention of the defendant's manager to the
fact that these orders still remained unfilled. On the 17th
of June, 1917, the plaintiff wrote to the defendant and called
its attention to the fact that it had not completed the ship-
ments on the two orders above referred to; that there still re-
mained to be shipped about 94,000 feet thereon, and demanded
that the same be shipped at once. The defendant at once
replied to this letter advising that it had cancelled this con-
tract and repudiated the same in the December preceding,
and declined to make any shipments thereon. Some cor-
respondence was indulged in by the parties, but all of the
plaintiff's demands were met by a positive refusal upon the
part of the defendant, and an insistence that the contractual
relations of the parties, so far as this 150,000 feet of lumber
was concerned, terminated in December, 1916.

The plaintiff contends that it is entitled to recover the difference between the contract price and the price it actually paid for the lumber under contract made by it in the month of October, 1917, practically ten months after the defendant insists that all contractual relations were terminated. It sufficiently appears that the price actually paid by the plaintiff for this lumber was the market price at the time it purchased the same. The defendant's contention, however, is that the measure of its damages, if it is entitled to damages at all, is the difference between the contract price and the market price of this lumber in December, 1916. It is not controverted that ordinarily the measure of damages to which the buyer is entitled for the breach of a contract for the sale of personal property is the difference between the contract price and the market price at the time and place of delivery; or, in case there is no time fixed for delivery, then the difference between the contract price and the market price at the time at which the defendant refused to deliver and repudiated the contract. Sutherland on Damages, § 651. In this case the time fixed by the contract for the delivery of the property had passed, but this provision, as before stated, had been substantially waived by the conduct of the parties, and the contract on the 5th of December, 1916, stood as though there had been no time provided for delivery of the material, so that if there was an unequivocal refusal of the defendant to furnish the lumber at that time then the plaintiff's damages must be measured by the difference between the contract price and the then market price, unless this case can be brought within an exception to be presently noticed. A perusal of the correspondence which passed between the parties in the month of December, 1916, leaves no doubt of the unequivocal refusal of the defendant to make further deliveries upon the orders. The plaintiff had no ground for believing after that time that the defendant would furnish it further material under this contract. In fact, the defendant had unequivocally and explicitly advised that it would not. However, there are some cases in which the material to be furnished under the contract is difficult to obtain in the market, and cannot be said to have an estab-

lished market value. The case of *Wood & Brooks Co. v. D. E. Hewitt Lumber Co.*, 89 W. Va. 254, 109 S. E. 242, belongs to this class. In that case the defendant had agreed to supply a certain kind of material used for making piano keys, and upon its refusal to complete its contract the plaintiff went into the market to purchase material for the purpose. It acted with promptness, and with diligence in procuring the material, but was unsuccessful in doing it for several months, and we held under those special circumstances that it was entitled to recover the difference between the price it actually paid for the material when it did find it and the contract price. In this case, however, it does not appear that the plaintiff made any attempt to procure this material after December, 1916, until the month of September, 1917, nor is there any showing that it could not have been procured in the market in December, 1916, immediately after the refusal of the defendant to make further shipments. In order for a plaintiff to recover the difference between the contract price and the price paid by it for material purchased a considerable time after the breach of the contract, it must appear that it acted with promptness upon the breach of the contract, and used due diligence to procure the material, and did procure it as soon as it could reasonably be procured. Unless these circumstances appear, then the buyer will not be permitted to recover upon the basis of the price actually paid by him for the material purchased to take the place of that contracted for. We do not find anything in this case to take it out of the general rule controlling as to the measure of damages for breach of an executory contract for the sale of personal property. The view we have is that the breach of the contract was complete upon the unequivocal refusal of the defendant to make further shipments under it in December, 1916, and that there is no evidence upon which the jury could find a verdict for any more than nominal damages in favor of the plaintiff, there being no showing as to what the market price of this material was at that time, or that it could not readily be procured in the market.

We will, therefore, reverse the judgment complained of, set aside the verdict of the jury, and remand the case for a new trial.

*Reversed and remanded.*