TIDE WATER SALES CORPORATION, *a corporation v.* JARVIS OIL COMPANY, INC., *a corporation*

(No. 7653)

Submitted September 19, 1933.   Decided December 16, 1933.

*Steptoe & Johnson, James M. Guiher,* and *W. Ervin Miller,* for plaintiff in error.

*Powell & Clifford,* for defendant in error.

WOODS, JUDGE:

This is an action by Tide Water Oil Sales Corporation, a wholesaler of gasolines and oils, to recover from Jarvis Oil Company, Inc., a distributor, an alleged balance due on gasoline shipments made over the period September 22, 1930, to April 13, 1931, inclusive. The trial court, upon completion of the evidence, directed a verdict for the plaintiff in the sum of $2,494.15, and entered judgment thereon. Defendant prosecutes error.

On May 23, 1930, defendant, which had been distributing plaintiff's products since 1927, entered into a one-year contract, whereby it agreed, among other things, to take a certain quantity of gasoline and oil. The provision in regard to price reads: "The price per gallon * * * to be paid by distributor shall be: a. For Tydol gasoline, the tank wagon price therefor as determined by Tide Water, for Clarksburg, W. Va., upon

494

date of shipment, less a discount of $.03 when the tank wagon price is $.14 or less per gallon; $.035 when the tank wagon price is more than $.14 and less than $.16 per gallon; $.04 when the tank wagon price is $.16 or more per gallon. In no event, however, shall the net price to be paid by the distributor be less than 8c per gallon f.o.b. Bayonne, N. J.''

At the time of the execution of the foregoing contract, and during the period covered by this litigation, the term ''tank wagon price'' meant a figure 2c above the prevailing price at which the dealer purchased from the distributor. From May 23rd to September 22, 1930, ''tank wagon price'' at Clarksburg for Tydol gasoline was $.151, and dealers' price $.131, per gallon. During that period, all shipments were billed at $.151, less $.035 per gallon, as per terms of the contract, less a ''special allowance'' of $.015. The latter deduction was made in accordance with a concession, granted by plaintiff in its letter of March 8, 1930, which was subject to withdrawal without notice.

There was a 2c decline in gasoline on September 24, 1930, and, thereafter, to-wit, September 26th, plaintiff began to bill defendant at $.131, less $.03 (the contract discount ''when tank wagon is $.14 or less'')—the ''special allowance'' theretofore deducted being omitted. Defendant, however, disregarded plaintiff's invoices and made all remittances at a figure 5c below tank wagon price. Some correspondence followed, plaintiff asserting its right to settlement in accordance with the terms of the contract. However, in its letter of October 7th, plaintiff granted defendant a special allowance of $.0055 per gallon and on November 1, 1930, wrote defendant:

''We are, however, going to bill you on a better basis than that covered in your letter of October 7th, and effective as of September 24th all shipments to your account, * * * will be invoiced on a basis of a discount of 3c per gallon under tank wagon price for Tydol as established by Tide Water and an additional special allowance of 1c per gallon. This, in addition to waiving the stop clause in your contract, means an increase in the special allowance of .0045c per gallon. * * * We feel that this is a very fair proposition to you as it is considerably better than

spot price today in any territory. We are advised that you have been making deductions from remittance made on the basis of a total of 5c under tank wagon. These deductions, of course, cannot be allowed and we would ask that you send us your check to cover the difference between the total spread of 4c enumerated above and the 5c which you have assumed in your remittance. I am sure that after reviewing this situation that you will feel as we do that we are extending our fullest cooperation to you in giving you this additional margin on which to operate.''

According to the foregoing defendant was granted a ''special allowance'' of $.01 in addition to the contractual discount of $.03. This concession, which accorded a ''spread'' of 2c per gallon between the invoice price to defendant and dealers' price, was not satisfactory to defendant, who was insisting on a ''spread'' of 3c, for on January 5, 1931, Hallas, a representative of plaintiff company, at Pittsburgh, called Jarvis, president of the defendant company, on the 'phone, relative to a proposed 2½c margin. The controversy arising out of this proposal will be detailed more fully later in this opinion.

It is contended that the trial court erred in finding, as a matter of law, that defendant was not entitled to (1) a special allowance of 2c per gallon on two consignments of gasoline, shipped prior to, and delivered after, the drop in price on September 24, 1930; (2) a ''spread'' of 3c between distributors' price and dealers' price during period September 26th to October 21, 1930, inclusive; and (3) a 2½c margin under an alleged agreement of January 5, 1931.

With reference to the first item, it suffices to say that under the contract the billing was to be on the basis of tank wagon price ''as determined by Tide Water, for Clarksburg, W. Va., upon date of shipment.'' Under such explicit terms, the distributor was not warranted in deducting an additional 2c to cover drop in gasoline before delivery.

In defense of its arbitrary deduction of 5c per gallon on all shipments of gasoline over the period September 26th to October 21, 1930, inclusive, the defendant insists that the trial court should have admitted the contract of 1929, and certain letters and telegrams showing an apparent departure

from the contract meaning of the expression "tank wagon price" in plaintiff's invoicing, the differences arising therefrom, and the concessions granted defendant as a result thereof. It is defendant's contention that the excluded evidence would tend to show that it had been lulled into the belief that it would be taken care of under the contract of May 23, 1930, to the extent of a 3c "spread"; especially in view of the fact that the concession of March 8, 1930, was deducted by plaintiff until the decline in the price of gasoline on September 24, 1930. However, we do not believe this contention is well taken, since, by the incorporation of a "stop clause" in the 1930 contract, it is evident that the parties were not intending to continue under the old contract, or that the terms were the same. "Tank wagon price" under the 1930 contract therefore means but one thing, namely 2c above dealers' price.

As already noted, the third phase of the case deals with an alleged modification of the existing contract. Mr. Jarvis testified concerning the conversation with Hallas:

> "Well, about nine o'clock on the morning of January 5th Mr. Hallas called me to the telephone and he, of course, asked me how I was and how things were going, and he said: 'I have got good news for you', and I said: 'I am glad to hear somebody has good news for me', and I said: 'What is it?' and he said: 'Your margin is going to be two and one-half cents,' and I said: 'From when?' and he said: 'From right now, and I am going to try to get it back to September 24.' I said: 'I wouldn't be interested in that at all.' 'Well,' he said, 'they will take care of you, you needn't worry about that,' and I said: 'Well, they always have and I suppose they will,' and he said: 'You go ahead and everything will be taken care of as it has in the past.' "

On January 9, 1931, Jarvis wrote Hallas: "May we please have a letter from you by return mail confirming the telephone conversation you had with the writer on Monday, January 5th, regarding the extra half cent per gallon on gasoline which Tide Water Oils Sales Co., is allowing us in order to make our margin 2½ per gallon." And on the 13th Hallas replied that in confirmation of conversation on Janu-

ary 5th "your margin will be a guaranteed 2½c margin with a 7c stop clause, f.o.b. Bayonne. * * * We are having a contract drawn up with this guarantee in it which I think will be very satisfactory to you and which will allow you to continue business on a fair margin." Defendant made no reply to Hallas. However it did deduct enough from all remittances to give it a 2½c margin.

The trial court, after taking the position that there was no material conflict as to the facts surrounding the purported understanding, found that the defendant had acquiesced in the interpretation embodied in Hallas' letter of January 13th, by reason of its failure to take prompt action by telephone, letter or telegram repudiating the statement and urging that the 7c stop clause was no part of the telephone conversation, and entered judgment on this phase of the case in an amount of $906.58. However, in view of the established fact that defendant's remittances were in accordance with its own interpretation of the understanding of January 5th, we are of opinion that the trial court erred in finding that there was an acquiescence.

This brings us to the question of whether there is sufficient evidence of an agreement between Hallas and Jarvis on behalf of their respective companies to go to the jury.

While Jarvis made the statement that he would not be interested in the 2½c proposal, as delineated by him, the conversation, however, did not stop there. I continued: " 'Well,' he said, 'they will take care of you, you needn't worry about that,' and I said: 'Well, they always have and I suppose they will,' and he said: 'You go ahead and everything will be taken care of as it has in the past.' " Did the foregoing amount to a continuance of the original offer? Was a stop clause included?

It is established by plaintiff's own witness that if its interpretation of the agreement, as indicated by the letter of January 13th, stands, that defendant's margin over that allowed by the letter of November 1, 1930, is increased to the extent of only .0008c per gallon, or a total discount of .0208c per gallon. Defendant therefore insists that there was not sufficient "good news" under such interpretation to prompt Hallas' telephone conversation of January 5th.

Under the circumstances, the Court is of opinion that the evidence is sufficient to submit to the jury the question of whether or not a new contract was entered into. *Bowyer* v. *Knapp & Martin,* 15 W. Va. 277; *Wood & Brooks Co.* v. *Lumber Co.,* 89 W. Va. 254, 109 S. E. 242.

We therefore affirm the trial court in regard to the first two phases of the case, and reverse the judgment, set aside the verdict, and remand the case, for further proceedings not at variance herewith.

*Reversed and remanded.*