# CHARLESTON.

MORGAN-GARDNER ELECTRIC CO. v. BEELICK KNOB COAL CO.

Submitted May 2, 1922.   Decided June 3, 1922.

1. TRIAL—*That One Party Has Introduced Improper Evidence Without Objection Does Not Entitle Opposite Party to Introduce Improper Rebuttal Evidence.*

   The fact that improper evidence of one party has been admitted, without objection, does not entitle the opposite party, if objection is made, to introduce improper evidence in rebuttal. He should move to strike out the evidence improperly admitted. (p. 353).

2. SALES—*Where Title Has Passed, Seller May Recover Price Though Buyer Refuses to Take Possession.*

   If a contract of sale of personal property has been fully performed on the part of the vendor and title has passed to the vendee, the vendor may recover the purchase price,.

though the vendee has refused to take possession of the property.   (p. 353).

3.  SAME—*Suit for Price Not Maintainable- Unless Title Has Passed; in Action for Contract Price Seller Must Recover That or Take Nothing and Cannot Recover for Breach of Contract.*

If the title to the property has not passed to the vendee, the vendor can not maintain an action for the purchase price. And in an action solely for the purchase price, the vendor must recover for the contract price, or take nothing; and in such action he can not recover damages for the breach of the contract, where it appears that the vendee has renounced the contract before title to the property has passed.   (p. 355).

4.  SAME—*Contract is Executory. Until Title Passes; Seller May Recover, Damages for Buyer's Breach While Contract Remains Executory; Measure of Damages is Different Between Market Price and Value of Property.*

A contract of sale of personal property remains executory until title has passed; so long as it is executory, either party may renounce it, subject to the other party's right to be compensated in damages for the breach; and if, while the contract remains executory, the vendee renounces it, the vendor is not entitled to recover the contract price, but may recover damages for the breach in a proper action for that purpose, and in such case the measure of damages is the difference between the contract price and the market value of the property.   (p. 356).

5.  SAME—*In Action for Price, Instruction That Buyer Could Not Cancel Order or Renounce Contract for Manufacture of Machinery Without Seller's Consent Held Error.*

Where, in an action for the purchase price of a mining machine, the vendee makes defense on the ground that he renounced the contract or cancelled the order before the machine was manufactured or title had passed, it is error to instruct the jury that if they find that plaintiff and defendant entered into the contract, dated July 14, 1920, for the manufacture and delivery of the mining machine, carrying the provision that shipment was to be made January 10, 1921, then the vendee could not cancel the order or renounce the contract without the consent of the vendor, it appearing from the contract that title to the machine was not to pass until it was manufactured and delivered.   (p. 356).

6. CONTRACTS—*Offer Must be Accepted to Become a Binding Contract.*

   An offer, to become a binding contract between the parties, must be accepted. (p. 358).

7. SALES—*Written Order to Manufacturer in Which the Latter Changed Date Held Not to Constitute Binding Contract, Until Change Should be Assented to by Purchaser.*

   And where a prospective purchaser gave a written order for a mining machine to the general sales agent of the plaintiff, a manufacturer, which was not to become binding on plaintiff until it had been approved by an officer of plaintiff at its principal office, and in which it was provided that the machine was to be shipped "as soon as possible", the parties knowing at the time that the purchaser did not want the machine unless it could be shipped within three weeks from the date of the order, and the manufacturer, upon receipt of the order, changed it by striking out the words "as soon as possible" and inserting in lieu thereof "January 10, 1921", thus postponing the date of delivery about four months, approved it as changed and forwarded it to the purchaser, this did not make a contract binding upon the purchaser, until it had been assented to by him in its changed form. (p. 358).

8. PRINCIPAL AND AGENT—*Notice To Agent of Seller That Buyer Did Not Want Machine to be Manufactured, Notice to Seller.*

   Generally, notice to an agent is notice to his principal; and if, soon after the receipt of the changed order, such purchaser notified the agent that he did not want the mining machine, there was no binding contract between the manufacturer and the purchaser, though the purchaser retained the changed order and gave no further notice to the manufacturer. (p. 358).

9. SAME—*Notice to General Sales Agent Who Negotiated Contract That Buyer Would Not Accept it in Changed Form was Notice to Seller.*

   And if the purchaser assented to the order in its changed form so as to make a contract binding upon him, and afterward, but while the contract was executory, renounced it, notice thereof to the general sales agent who negotiated the contract for his principal, if given during his agency, was notice to his principal. (p. 358).

10. SALES—*Under Conditional Sale Contract Held That Seller May Recover Price Though Buyer Refuses to Accept Property.*

    Where a conditional sale contract provides that the title

91 W. Va.

and right to possession of the property shall remain in the vendor until the purchase price has been paid, and the vendor has performed its part of the contract, before renunciation of the contract has been made by the vendee, the vendor may recover the purchase price, though the vendee refuses to accept possession of the property.  (p. 359).

Error to Circuit Court, Fayette County.

Action by the Morgan-Gardner Electric Company against the Beelick Knob Coal Company.  Verdict and judgment for plaintiff, and defendant brings error.

*Reversed and remanded.*

*Osenton & Lee,* for plaintiff in error.
*Dillon & Nuckolls,* for defendant in error.

MEREDITH, JUDGE:

Plaintiff, on March 26, 1921, brought its action for the recovery of the purchase price of a Short Wall Mining Machine and equipment, by way of notice of motion for judgment for money due upon contract.  Defendant filed its special plea, denying the execution of the written contract and filed its plea of non-assumpsit.  The trial resulted in a verdict and judgment for the full purchase price, $4000.  Defendant obtained a writ of error.

Defendant is a coal mining corporation, with mines near Meadow Bridge, Fayette County.  Plaintiff is a corporation manufacturing machinery in the city of Chicago, including mining machines and equipment.  The Cook & Wilson Company of Charleston was acting as its sales agent.  W. A. Reese was the representative of Cook & Wilson Company.

About July 1, 1920, the defendant began negotiations with Cook & Wilson Company for the purchase of a "Brest Type Mining Machine" and Reese telegraphed Thompson, defendant's general manager, on July 10th that this type could not be shipped under forty-five days, and that he would see him on Tuesday.  On July 14th Reese saw Thompson at defendant's plant, and defendant in writing ordered a Short Wall Type Machine with equipment at the price of $4000, f. o. b.

Chicago. This order was on one of plaintiff's printed forms, and was to be approved by an officer of plaintiff at its principal office in Chicago before it became binding on plaintiff. It specified that the machine and equipment were to be shipped "as soon as possible". Reese, a witness for plaintiff, testified that Thompson "stated at the time the contract was signed that he didn't want it unless he could get it in a couple or three weeks time." The evidence clearly shows that defendant was in a hurry for the machine and that Reese knew that when the order was taken. On July 17th he wrote Thompson from Charleston "Mr. Farquhar (Cook & Wilson Company's vice-president) has advised that they would ship new machine next week if he had to go to Chicago himself for it. Have wired him again to-day to wire me Monday what day it would be shipped and will wire you when I get his wire."

On July 21st Reese telegraphed Thompson: "Thirty days best possible shipment on Short Wall Machine. Have tried every place to rent a Brest machine for you. Unable to do so. Please advise at once if we shall enter order for shipment of the Short Wall Machine."

Defendant did not reply to this telegram, but Thompson talked to Reese by telephone and told him to keep on the look-out for a second-hand machine, and Reese said he thought he could get some second-hand Brest machines somewhere on Coal river, and that he would keep looking for them. The latter part of July or first of August Reese again saw Thompson, near defendant's plant, and told him he had located two second-hand machines over near Amigo in Raleigh County. After some conversation, Thompson bought these at $2700, Reese to furnish some repairs and a man to put them in shape. Thompson testifies that on this occasion he told Reese he would not need the other machine he had ordered and that Reeese said he would take care of that. U. G. Crane, a witness for defendant, says he was present on this occasion, and that Thompson said "If I take the old machines this will cut out the other contract" and Reese replied "Yes, certainly". Thompson replied, "Well now, I will depend on

you attending to this, and Reese said in reply, "Sure, I will attend to it as soon as I go in." J. D. Johnson, a witness for defendant, and who was present also, testifies substantially to the same effect. Reese testifies that he does not think Thompson ever told him he did not want the machine he had ordered when the two second-hand machines were purchased, but said he was not positive about it, though upon rebuttal he says he never told Thompson that the purchase of the two second-hand machines "does away with or cancels the contract for the other machine." He does state that he saw Thompson about the 10th or 15th of August, and that Thompson stated to him that he had got a letter from the plaintiff notifying him that the date of delivery had been fixed for January, 1921, and that Thompson told him that it was alright to let the order stand, stating that he would reserve the right to cancel it. This conversation was denied by Thompson. The plaintiff received the order July 27th, approved it July 28th, and on August 6th notified defendant that it had changed the date of shipment to read January 10, 1921. To this, defendant made no reply, Thompson giving as his reason that plaintiff's agent had agreed to attend to it, and that he had cancelled the order by notifying Reese and therefore gave it no more attention. Plaintiff shipped the machine and equipment about January 15, 1921, and when it arrived at Hawley Siding, defendant refused to accept it. It was unloaded there and defendant had it placed under cover for protection from the weather. It immediately notified plaintiff it would not accept it, calling attention to the fact that the order had been cancelled by it in August, 1920. Plaintiff then had the machine brought to Charleston and placed in storage, as it claims, to be held for defendant and as its property.

It disclaims title and insists that title is in the defendant. It will be recalled that plaintiff sued for the purchase price, not for failure to accept the goods. Defendant contends that it never accepted the goods and that title never passed to it; that, therefore, the measure of damages is not the contract price, but the difference between the contract price and the

market value at the time of the breach, if there was any breach.

Defendant relies for reversal upon three assignments of error:

First: That the court erred in refusing to allow defendant to introduce in evidence a letter from plaintiff to defendant dated January 17, 1921, stating that the machine had been shipped, and defendant's telegram in reply thereto, dated January 20th, stating: "This machine contract was cancelled last August. Better divert this shipment to some other customer as we are unable to use the machine." Its counsel contend that this should have gone in for the purpose of contradicting Connors, Vice-President and General Manager of plaintiff, who testified he had no information that defendant would not accept the machine, until it had reached its destination, and the machine did not reach its destination until January 28th. This is an immaterial matter; the telegram was sent after the rights of the parties had been fixed, and it is a self-serving statement which was properly rejected. Connor's testimony should have been limited in this respect to the time of and preceding the delivery, but there was no objection to it, hence we can not consider it. Because one party introduces improper evidence, without objection, that is no reason why the opposite party should be permitted to introduce improper rebuttal testimony when timely objection is made.

Second: Defendant complains of plaintiff's instructions Nos. 1, 2 and 3. No. 1 told the jury that if they believed that plaintiff and defendant entered into the written contract and that plaintiff manufactured and shipped to defendant the mining machine called for in the contract, that plaintiff would be entitled to recover the contract price of the machine unless they should further find that plaintiff afterward took possession of the machine with the intention of retaining title to it; and No. 2 is to the effect that if they believed defendant signed the contract in duplicate, for the purchase of the machine, dated July 14, 1920, which stated that the machine was to be shipped "as soon as possible", and that the con-

tract did not become binding unless it was approved by the plaintiff, and that plaintiff struck out the words ''as soon as possible'' and entered in the place thereof ''January 10, 1921'' and then approved the same, and on August 6th returned a copy of the contract to defendant, calling attention to the date of the shipment, and that if they should further find that the contract as changed was accepted by defendant and that in accordance with the contract plaintiff manufactured and shipped the machine according to its terms, then the plaintiff would be entitled to recover the purchase price.

These two instructions ignore defendant's claim that the contract was cancelled on or about the first of August, 1920, and should not have been given in that form. Instruction No. 3 is as follows: ''The court further instructs the jury that if you believe that the written contract introduced in evidence, dated July 14, 1920, was entered into between the plaintiff and the defendant for the manufacture and delivery of a mining machine and equipment carrying the provision that the shipment was to be made January 10, 1921, then the Court instructs the jury that the same could not be cancelled on the part of the defendant without the consent of the plaintiff even though the defendant may have desired to cancel said contract.''

We think this instruction should not have been given. The defendant could, before the machine was manufactured and delivered renounce the contract. It could revoke the order. The seller then would be excused from making and delivering the machine; or it could treat the renunciation or revocation as a present breach and sue at once for damages; or if it did not elect to treat the renunciation as a present breach, it could not continue the performance, complete the manufacture and delivery of the machine, and recover damages based on a full performance. In other words, it could not increase its damages by a useless performance. *Gibbons* v. *Bente,* 51 Minn. 499, 53 N. W. 756, 22 L. R. A. 80; *Hinckley* v. *Pittsburgh Bessemer Steel Co.,* 121 U. S. 264, 30 Law Ed. 967; *Amer. L. Ins. Co.* v. *McAden,* 109 Pa. 399; *Lord* v. *Thomas,* 64 N. Y. 107; *Collyer* v. *Moulton,* 9 R. I. 90, 98 Am.

Dec. 370; *Heaver* v. *Lanahan,* 74 Md. 493, 22 Atl. 263; *Acme Food Co.* v. *Older,* 64 W. Va. 255, 61 S. E. 235; *Comstock* v. *Droney Lumber Co.,* 69 W. Va. 100, 71 S. E. 255.

Until the machine was manufactured and delivered f. o. b. cars Chicago, the contract was executory and the defendant had the legal right to violate, abandon or renounce it, subject, of course, to the plaintiff's right to be compensated in damages. While the contract called for the sale of a specified article, it was one made for sale generally. It was not like the sale of a suit of clothes to a particular person and for his sole use, but so far as the record shows, the machine in question was similar to hundreds of others made by plaintiff and could be used by one coal operator as well as another. Until delivery, therefore, the contract was executory and the title remained in the seller. If defendant renounced the contract, revoked the order before the machine was delivered, the plaintiff would not in that event be entitled to recover the contract price, but damages for the breach. "If an executory contract of sale has been broken by the vendee before the title had passed, the measure of damages, in an action, by the vendor, is the difference between the contract price and the value of the property." *Acme Food Co.* v. *Older, supra.*

The instruction in effect told the jury that defendant could not renounce the contract, that having once bound itself there was no escape but by payment of the full contract price. Such is not the law, as is clearly stated by Judge POFFEN-BARGER in *Acme Food Co.* v. *Older.* It was error to give this instruction.

Third: Defendant also complains of the court's refusal to give its instructions Nos. 6 and 8. No. 6 says that if the jury should find for the plaintiff, the measure of its damages is the actual injury sustained by it by reason of the breach by the defendant, if the jury should find there has been such breach; and that such damages, if any, consist of the difference between the contract price of the machine and its market value, together with any expense directly incurred by the plaintiff in connection therewith. This would be good as an instruction in case the plaintiff had sued for a breach of an

executory contract of sale; but plaintiff here sues for the contract price. On this motion it must recover the contract price or nothing. It claims it had performed its part of the contract, had made and shipped the machine before defendant gave it any notice that it would not accept it; in other words, it sued upon what it claimed was an executed contract. If the contract was fully performed by plaintiff before defendant notified plaintiff that it would not be bound by the contract, then plaintiff is entitled to the full contract price; if the defendant renounced the contract before the machine was manufactured or shipped, then the title did not pass to the defendant, and plaintiff could recover only damages for the breach, which would be the difference between the contract price and the market value of the machine. This instruction totally ignores plaintiff's theory of the case,—that it was a sale executed,—and therefore was properly refused.

We repeat in this connection that, while this was a sale of a mining machine and equipment, it was not the sale of a "specific article" as distinguished from "a sale of goods generally." It is in the same class as a sale of a typewriter of a particular kind, or type, but not different from thousands of the same type made for a general market.

Instruction No. 8 told the jury that if they believed from the evidence that W. A. Reese was plaintiff's agent in making the sale of the mining machine to the defendant, and that while the negotiations for the sale were still pending and before the parties agreed upon the time of shipment the defendant notified Reese that it would not take the machine and to cancel the order for it, that such notice to him as agent was sufficient notice to the plaintiff.

Let us briefly review the situation. On July 14th the order was signed by defendant. On the 17th Reese wrote Thompson that he thought plaintiff could ship the machine the next week. On the 21st he telegraphed him it could not ship under thirty days, and asked advice whether he should enter defendant's order, stating he had been unable to rent a Brest machine. Thompson did not reply advising him to enter the order, but called him on the telephone and told

him to keep on the look-out for second-hand machines. During the latter part of July or first of August Reese met Thompson and told him he had located two   second-hand machines and these Thompson bought.   He says that then the original order was cancelled; that he so notified Reese, and that Reese said he would take care of it.    The plaintiff at that time had the order at its principal office.    It received it July 27th, and although it says it was approved July 28th, it did not notify defendant until August 6th, and when it did so, it had changed the date of shipment, a very material change, as the parties all agree, that when the order was given, defendant was in a great hurry for the machine. It wanted delivery "as soon as possible" and Reese admits it did not want it unless shipment could be made in two or three weeks.    Reese, acting for Cook & Wilson Company, was general sales agent for the plaintiff in this territory. Notice of defendant's cancellation of the order or renunciation of the contract was given to him while the negotiations were pending, and before notice of the change in date of shipment had reached defendant.    It was received by Reese not only "during his agency," for his agency was a continuing one, but while he was acting as plaintiff's agent in the very transaction involved.    He was then, what Mechem calls "the *alter ego* of the principal—the principal's other self."    2 Mechem, Agency, Sec. 1805.    And remember too, according to defendant's testimony, this occurred   before August 6th, before plaintiff mailed its notice of approval under the changed condition as to shipment, and before any binding contract had been made between the parties.    We repeat, before any binding contract had been made between the parties; for when the plaintiff changed the terms of shipment, this made a new contract to which defendant was not bound to agree.    Under these circumstances, defendant says it notified plaintiff, through its agent Reese, that it would not take the machine.    We think such notice to him was notice to the principal.    "The law imputes to the principal, and charges him, with all notice or knowledge relating to the subject matter of the agency which the agent acquires or

obtains while acting as such agent and within the scope of his authority, or, according to the weight of authority, which he had acquired, and which he then had in mind, or which he had acquired so recently as to reasonably warrant the assumption that he still retained it." 2 Mechem, Agency, Sec. 1813. This rule is subject to certain exceptions, but the present case does not come within any of them.

If the offer of the defendant to purchase the machine was withdrawn, before it was accepted by plaintiff, then there was no binding contract between them, and it could certainly revoke the order before acceptance and approval by the plaintiff. The contract, under the circumstances detailed in this case, could not have been complete and binding until the defendant had given its assent to the change in date of shipment. This notice it did not receive from plaintiff until some time after August 6th, probably about August 8th or 10th. It never gave any notice of such assent directly to the plaintiff at its principal office. Reese says that Thompson told him to let the order stand, and that he would reserve the right to cancel it. This Thompson denies, a question to be determined by the jury. It was error to refuse defendant's instruction No. 8.

But even had there been a binding contract between plaintiff and defendant, we think that notice to Reese that defendant would not take the machine would be notice to his principal of defendant's renunciation of the contract. Ordinarily, after a contract of sale made by an agent is complete, the agent has no implied authority to rescind it, but, Reese was general agent for plaintiff with continuing authority, and defendant had the right to renounce the contract made through him by giving notice to him during his agency. If such notice were given, it was his duty to give actual notice to his principal; but since notice to the agent is notice to the principal, the law conclusively imputes such notice to the principal even though it had no actual knowledge of the renunciation.

In the discussion of this case we have treated the contract in suit as an ordinary contract of sale. However, it is not

that, but is a conditional sale contract, providing that the vendor retain the title and right of possession until the purchase price has been·fully paid, on the following terms: Thirty days net, or one-half cash thirty days, balance in three months by notes dated date of bill of lading and bearing interest at the rate of six per cent per annum. No notes were given. The contract further provides that the vendor, in default of any payment, may take possession of and remove the machinery without legal process, and shall have the right of admission to vendee's premises for that purpose, and in such case all payments made under the contract shall be deemed as having been made for the use of the machinery during the time it remains in the vendee's possession, and such payments are to be retained by the vendor as consideration therefor; provided, that if the valuation of such use exceeds the amount of such payment, the deficit or any other damages sustained by the vendor shall forthwith be due and payable.

It will be recalled that the plaintiff took possession of the machine, upon notice of non-acceptance by the vendee, and claims to hold it in storage for the defendant's account. It does not claim absolute right to it, but claims title and possession as security for the purchase price. We think that by placing the machine in storage it did not waive its rights under the contract any more than the defendant waived its rights by placing it under cover for protection from bad weather. This could not be considered an acceptance by defendant, nor could taking physical possession by plaintiff be considered a taking and keeping the machine as its own. Neither party by its conduct waived any right.

But the contract does not undertake· to specify all the remedies of the vendor in case the vendee defaults. It specifies but one and that is not exclusive. Until the purchase price is paid, the title and right to possession remain in the vendor. If the possession has passed to the vendee, the vendor, upon default, has the right to resume possession. However, the defendant claims it never had possession. If that be true, and we do not doubt it; then the right of the

vendor to re-possess the machine never became effective. The clause providing for re-possession of the machine, under the facts disclosed, never became applicable. Re-possession from the vendee by the vendor could not take place until the vendee had at some time the possession, and this it disclaims. We do not think therefore that the mere fact that plaintiff took possession of and holds the machine for the vendee's account limits plaintiff to its right to payments made, for none were made, or to the difference between the valuation of the use by defendant and the damages sustained by the vendor,—a mere action for damages.

Under this contract the vendor retained the title and right· to possession merely as security. If the plaintiff completely performed its part of the contract, before renunciation on the part of the vendee, then the beneficial interest in the machine, so far as was not inconsistent with the security of the vendor, became vested in the vendee, and the vendor would be entitled to recover the purchase price, notwithstanding it has title and possession. So if the contract became binding on the vendee, and it did not renounce it before performance by the vendor, the fact that title was reserved in the vendor until the purchase price was paid, will not prevent the recovery of the purchase price. Of course, upon recovery of the purchase price, the vendor would be required to deliver possession to the vendee. 1 Mechem, Sales, Sec. 615. The promise on the part of the vendee to make payment of the purchase price is unconditional, so we do not consider the fact that this is a conditional sale, in this respect, affects the vendee's liability. If the vendor had taken possession of the machine as and for its own, that would make a different situation. It could then treat the contract as rescinded; or, it could recover damages from the vendee for its breach of the contract to buy and pay for the machine, which would be the difference between the contract price and the market value, as in an ordinary contract of sale.

For the foregoing reasons, the judgment will be reversed, the verdict set aside, and defendant awarded a new trial.

*Reversed and remanded.*