AILSIE WOOD *v.* LONA SNODGRASS *et al.*

(No. 8161)

Submitted October 22, 1935. Decided October 29, 1935.

*W. E. R. Byrne* and *F. C. Pifer,* for appellants.
*H. W. Bowers,* for appellee.

HATCHER, JUDGE:

This suit involves a contract for personal support, etc.
In March of 1928, James Wood and Ailsie, his wife, owning

and residing on a farm in Kanawha County, prevailed upon their daughter, Lona Snodgrass and Arnold, her husband, then residing in Fayette County (where he had remunerative employment) to move to the home of the Woods, under a contract that in consideration for personal care and support of the Woods for the remainder of their several lives, payment of their burial expenses, and payment of taxes on the farm by the Snodgrasses, they should have the farm and all the other property of the Woods at their death. Pursuant thereto the Snodgrasses assumed immediate charge of the farm and of the personal property thereon, and of the care and support of the Woods. James Wood died in February of 1932. Mrs. Wood still resides with and is furnished maintenance by the Snodgrasses, though now under very strained relations. She brought this suit in July, 1933, to have the contract cancelled, charging that the Snodgrasses had breached every concurrent covenant of the agreement. She joined, as defendants with the Snodgrasses, her sons Joe and Harrison and her daughter. Tempa Smith, whom she charged with assisting the Snodgrasses in attempting to drive her from her home; and prayed that Joe, Harrison and Tempa be enjoined from visiting the home. The circuit court found specifically in favor of plaintiff on every charge against the Snodgrasses, made no finding against Joe, Harrison and Tempa, and decreed costs against "the said defendants."

The Snodgrasses have suffered much ill-fortune since moving to the Wood's farm, and have not been able to pay the taxes on the farm or the doctor's bills, etc., of the Woods, or the costs of Mr. Wood's burial. The taxes and the other expenses were advanced by Joe and Harrison Wood and George Hartwell, a son-in-law of Mrs. Wood.

There is no competent evidence of any dissension between James and Ailsie Wood and the Snodgrasses in the lifetime of James. During that period, the Snodgrasses seem to have performed their duty to the Woods as best they could. Shortly after the death of Mr. Wood, Mrs. Wood asserted exclusive ownership of the personal property on the farm, and her arbitrary and unreasonable acts in relation thereto (surrepti-

tiously selling two horses and wantonly smashing a mowing machine) opened the initial breach between her and the Snodgrasses. Following this, the conduct of each of the three was—on occasion—blameworthy. The details thereof, or of the criminations and recriminations made, would serve no useful purpose. From a great mass of evidence the following facts are established beyond question: the relations between the Snodgrasses and Mrs. Wood were pleasant until she asserted exclusive right to the personal property; she is not exact in her statements; she is naturally ''hard to get along with''; both of the Snodgrasses are naturally kind and inoffensive; Joe and Harrison Wood and George Hartwell compassionated the Snodgrasses in their adversity and advanced the taxes and the other expenses in their behalf; and all of the children of Mrs. Wood who have ever helped her substantially think she is in the wrong and side with the Snodgrasses. (The disinterested witnesses throw little light on the situation.) These facts speak louder than words. The record discloses no actual failure of the Snodgrasses to maintain the Woods and defray their expenses, and no actual failure in the payment of taxes. The only failure of the Snodgrasses is that they have not at all times been properly considerate of Mrs. Wood, and in that respect they have been as much sinned against (by her) as sinning. The only complaints she makes of their conduct, during the year prior to her deposition, are that they ignored her in their conversation, did not invite her to eat with them, and did not supply her room with fuel. The evidence preponderates against those complaints. The Snodgrasses profess willingness to continue maintaining Mrs. Wood and to be just as kind to and considerate of her as she will permit.

Under these circumstances, the care and support of the Woods by the Snodgrasses (frequently under trying conditions) should not go for naught, and we are of opinion that the ruling of the learned trial court is plainly wrong. Since the misconduct of Mrs. Wood both precipitated and fostered the friction with the Snodgrasses, the ''clean hands'' maxim closes the doors of equity against her at this time. Lawrence on Eq. Juris., sec. 760; Pomeroy, *idem*, (4th Ed.), sec. 404. However, the duty of the Snodgrasses to her is a continuing

one, and if hereafter they should fail in that duty, our action herein will not preclude her from again impleading them.

The judgment of the circuit court is reversed and the plaintiff's bill dismissed.

*Reversed; bill dismissed.*