THE CONSERVATIVE LIFE INSURANCE COMPANY *v.* NATIONAL EXCHANGE BANK OF WHEELING *et al.*

(No. 8297)

Submitted November 10, 1936. Decided December 1, 1936.

*P. D. Morris* and *Warren F. Morris,* for appellant.

*J. M. Ritz,* for appellees.

HATCHER, PRESIDENT:

On certification here, the second amended bill in this cause was held sufficient. See 114 W. Va. 271, 171 S. E. 530. Chaplane Hotel Realty Company (hereinafter called Realty) borrowed $75,000.00 in 1925 from the Conservative Life Insurance Company and secured the loan by a recorded deed of trust on its real estate. Payments of $10,000.00 annually were to be made on this loan. Realty was unable to make the annual payments, whereupon in May, 1929, upon its solicitation to arrange easier payments than those required under the first deed of trust, that security was released by the Insurance Company and a second deed of trust accepted from Realty upon the same property to secure $60,000.00, the remainder of the original loan. Payments of $4,000.00 annually were to be made under this re-adjustment. Only one of those installments was paid and the property was sold under the second deed of trust on February 4, 1932, and bid in by the Insurance Company for $60,000.00. The amount of its debt, then unpaid, was $58,277.32, which, with unpaid taxes on the property and costs of sale, more than consumed the bid.

On November 14, 1927, Realty borrowed $24,000.00 from the National Exchange Bank, with J. M. Ritz as endorser. Realty deposited with the Bank as collateral 995 shares of its stock. It also purported to assign in writing to the Bank for a period of five years, all the rents from its property, then amounting to $1440.00 a month. This litigation involves the claim of the Insurance Company to those rents from February 4, 1932, when it purchased Realty's property from the trustee, to November 14, 1932, when the purported rental assignment to the Bank terminated. That assignment was not recorded until January 16, 1932, and representatives of the Insurance Company deny actual notice of it prior to releasing the first deed of trust (in 1929). Such

notice is deposed by witnesses for the Bank. The circuit court found in favor of the Bank.

The question of notice assumed prominence under the pleadings but has become inconsequential under the admitted facts. The writing which the pleadings treat as an assignment did purport to assign all of the rentals accruing to Realty for the recited consideration of "One dollar and other good and valuable consideration." However, it appears that the Bank did not seek the writing, did not consider an assignment of the rents as a part of its deal with Realty, and manifested no interest in the writing prior to this litigation. Even the belated recordation of the writing in 1932 was the work of Realty, not of the Bank. Neither of the parties to the writing ever treated the rentals as assigned money. On the contrary, the Bank credited the checking account of Realty with every dollar of the rentals, amounting in all to $53,002.40; and Realty withdrew every penny of that account, with checks which the Bank honored without let or supervision. True, J. M. Ritz countersigned the checks; but he was representing himself as endorser, and not the Bank. His counter-signature was not mentioned in the purported assignment. His concurrence in Realty's withdrawals may explain the total lack of compliance with that instrument, but does not enliven it. The Vice-president of the Bank was its only official who testified that he had "a hand" in making the loan to Realty. He said without contradiction that the loan was made "on the endorsement", and that the Bank "was not relying on the assignment of rentals. * * * We were not a party to that part of it. * * * We took the note on the endorsement." In fact, he insisted the writing "was not an assignment. It was an agreement. * * * but we were not a party to it, except to be depositors of the money turned over to us." He also said the Bank did not have "a word" to say about the disposal of the rentals; "that was a question between the persons signing the agreement. We were merely the depositories of the company." And finally, he said the understanding was that the rentals "would be applied as the Chaplane Hotel

Realty Company and Mr. Ritz would direct." It is thus clear that the Bank paid no consideration for an assignment of the rents and did not accept the writing in question as such, prior to this litigation. We are therefore of opinion that the writing is a *nudum pactum*. "To constitute an agreement there must be a proposition by the one party and an acceptance by the other, which must be manifested by some appropriate act." *White* v. *Allen Kingston Motor Car Co.,* 69 Misc. 627, 126 N. Y. S. 150, 151. "An assignment does not differ in its essential elements from any other contract. There must be * * * mutual assent of the contracting parties. No contract is raised by a mere overture or offer * * * not definitely and expressly assented to by both parties." *Commercial Bank* v. *Rufe,* 92 F. 789, 795. Accord: 13 C. J. subject, Contracts, sec. 68. If it be contended that someone other than the Bank advanced a consideration for the writing, the fact of *no acceptance* by the Bank would still deprive the writing of vitality. Under the circumstances, of what moment is notice of the writing to the Insurance Company? The president of Realty testified that he informed the president of the Insurance Company *all about the transaction* with the Bank. If so, the Insurance Company knew how completely the purported assignment had been disregarded by the parties when it was led to accommodate Realty in 1929. If the arrangement was known to the Insurance Company then, its *change of position* (voluntarily releasing its first deed of trust) would naturally be attributed to that disregard. Consequently, it would be inequitable to permit Realty or the Bank to profit at the expense of Realty's accommodator by honoring now the writing which they dishonored in 1929.

Since the parties to the writing regarded it as merely constituting the Bank a depositary of the rentals, we shall do so likewise. As a mere depositary, the Bank's right to the rentals ended when Realty's right thereto terminated at the trustee's sale on February 4, 1932.

There was a difference of $447.48 between the sum bid at the trustee's sale and the amount of the Insurance

48

Company's debt plus the costs of sale. That difference with interest, the circuit court ordered the Insurance Company to pay to J. M. Ritz as a second lienor of Realty. This was also error. The trustee testified without contradiction that the sale "was not made subject to taxes"; that the taxes were "figured" at the sale; and that after the sale, he, as trustee, procured from the Insurance Company checks sufficient to pay the taxes.

Consequently, the decree of the circuit court is reversed and the cause remanded for such further proceedings as may be requisite, including the right to plaintiff to amend its pleadings to conform to the facts.

*Reversed; remanded.*