RUPERT C. MCGINNIS

*v.*

GEORGIA P. ENSLOW, *et al.*

(No. 10635)

Submitted April 28, 1954. Decided June 15, 1954.

GIVEN, PRESIDENT, dissenting.

*Scott, Ducker* and *Keadle, Okey P. Keadle, P. W. McCreight,* for appellant.

*Edward H. Greene, Claude M. Morgan,* for appellee.

BROWNING, JUDGE:

Rupert C. McGinnis brought his suit in the Circuit Court of Cabell County praying that a deed from the defendant Georgia P. Enslow to the defendant Foster Foundation, a corporation, dated May 23, 1952, be set aside, and that the defendant, Mrs. Enslow, be required to convey the property described in that deed to the plaintiff, pursuant to a written contract, dated May 12, 1952. The Foster Foundation was established many years ago in the City of Huntington as a home for elderly women, and, on November 4, 1951, Georgia P. Enslow, a widow seventy-seven years of age, made application for admission upon a form provided by the Foundation. At that time, there

was no vacancy, and her application was placed on the waiting list and remained thereon until April 10, 1952, at which time the Board of Trustees voted to admit her and two other women, subject to the regulations pertaining to such admittance. At that time, a room was made available for Mrs. Enslow which, according to custom, was to be kept for her until she was admitted, or declined to enter the Home. The pertinent provisions of the application form signed by Mrs. Enslow are: "In consideration of my admission as a resident of Foster Memorial Home, I hereby convey, assign and transfer to the said Foster Foundation all property, both real and personal, of which I am the owner, and agree to convey, assign and transfer to said Home all property, both real and personal, which I shall hereafter acquire, or to which I shall become entitled (this conveyance, assignment and transfer to take effect on my admission to the said Home.) I further agree to execute and deliver to the said Foster Foundation on the demand of its Trustees such further conveyances, assignments and transfers as may be by them deemed necessary, to vest in said Foster Foundation the title to all real and personal property now owned or hereafter acquired by me. The net income from said property to be paid to me during my lifetime."

The applicant listed as personal property $2,100.00 cash on hand and in banks, and as real property one house and lot situated at 916 Eleventh Avenue, Huntington, West Virginia, valued at $25,000.00, and burdened with a mortgage of $5,000.00. It is this house and lot which is the subject of the present litigation.

The testimony shows that about April 1, 1952, the real property was placed upon the open market by F. L. Agee, a member of the Board of Trustees of the Foundation, for sale at a price of $26,000.00. Although the evidence is vague as to the exact date, and it may have been subsequent to April 10, several realty companies in the City of Huntington became interested in selling the property, and it was shown to a number of prospective purchasers. On April

15, 1952, John East, of the John H. East Realty Company, obtained from Mrs. Enslow an unsigned "option agreement", and at about that time placed his company's "For Sale" sign in the yard of the property. East, as well as other real estate agents, was aware of Mrs. Enslow's contemplated entry into the Foster Home. Mary McGinnis, wife of the plaintiff, testified that about three weeks before she was taken by Austin Kennedy, a salesman for East, to see Mrs. Enslow that she had observed the East "For Sale" sign on the Enslow property and it was this observation that caused her to become interested in the purchase of the property. She first talked to Mrs. Enslow about purchasing the property during the second week of May. On May 11, her husband, the plaintiff, inspected the property, and on May 12, entered into a purchase agreement with the East Realty Company at a price of $20,000.00, subject to the owner's approval, and deposited $500.00 as earnest money. East testified that he immediately informed Agee, at Mrs. Enslow's request, of the $20,000.00 offer, and was informed by Agee that another person had offered $21,000.00, and that Agee asked him to see if his client would not go up to $21,000.00. On May 28, East obtained Mrs. Enslow's signature to the purchase agreement with the plaintiff, and informed Agee by letter of her acceptance thereof. In the meantime, the Foster Foundation had prepared a deed, dated May 25, 1952, conveying the property to the Foster Foundation, and had taken it to Mrs. Enslow for her signature. Mrs. Enslow declined to execute the deed, asked for time to consult with her attorney, and, apparently, at the latter's suggestion, Agee by letter, dated June 4, 1952, wrote Mrs. Enslow as follows: "Supplementing the contract between yourself and the undersigned Foster Foundation for your admission to the Foster Memorial Home, we hereby agree that we will accept your property at No. 916 Eleventh Avenue, Huntington, West Virginia, for which you are executing your deed to the Foundation, at an agreed figure of $19,000.00, or such additional amount as the Foster Foundation may be able to obtain for your property on sale

thereof, less all necessary expenses and commissions, if any, * * *." Upon receipt of this letter, Mrs. Enslow executed the deed to the Foundation. It was recorded on June 5, and the Foster Foundation subsequently paid off the indebtedness against the property.

It developed in the testimony that there were some conditions incident to being admitted to the Foster Home, which were not included in the written application signed by Mrs. Enslow. Although the application form states that the applicant will pay the admittance fee, the amount is not stated therein, but the testimony shows that it was $1,000.00. Furthermore, an applicant was required or permitted to spend one or more nights at the Home prior to formal admittance, at which time she submitted to a physical examination by a physician selected by the Foundation. There was another condition which was not mentioned in the written application to the effect that a probationary period of six months was in effect, during which time an inmate could decide to leave, or the officials of the Foundation could require her to do so, and in the event either happened, the inmate was placed as near as possible in status quo financially.

Mrs. Enslow spent the night of April 30 at the Home, was examined by a physician, and a medical report was submitted favorable to her acceptance. She became a permanent resident of the Home on June 11, although the evidence indicates that she had some furniture moved into her room prior to that date.

The trial chancellor found that the plaintiff was a bona fide purchaser for value without notice, while the defendant, Foster Foundation, had full knowledge of plaintiff's contract, and was not a complete purchaser, having paid no money, and having taken only such title as Mrs. Enslow then had. The chancellor decreed cancellation of the deed to the Foundation, and ordered Mrs. Enslow to execute a deed to the plaintiff within thirty days, upon payment of the balance of the purchase money.

This Court granted an appeal from this decree on October 1, upon the petition of the Foster Foundation.

The defendant, Foster Foundation, contends that the trial chancellor was in error in holding that the plaintiff was a bona fide purchaser for value without notice, and entitled to have his rights adjudicated upon that basis. This Court is in agreement with that contention. It is true, as far as this record shows, the plaintiff, on May 12, 1952, had no actual knowledge of the execution by Mrs. Enslow of her application for admittance, the action of the Board of Trustees on April 10, 1952, or of the oral notification of Mrs. Enslow by an official of the Foundation that she had been accepted. To be protected, however, such a purchaser must be a complete purchaser, one who has no notice of the prior sale, and who has paid all of the purchase money.

In *Heck* v. *Morgan, et al.,* 88 W. Va. 102, 117, 106 S. E. 413, this Court said: "Notice of prior existing rights received by a purchaser of property before he has paid the purchase money is equivalent to notice before the contract of purchase. He is not a complete purchaser until the consideration has been paid. He was in a position, after he was fully informed of the rights of the prior purchaser, to fully protect himself by withholding the consideration which he was to give."

The plaintiff deposited only $500.00 with the East Realty Company, subject to the completion of the transaction. Therefore, he is not a complete purchaser, and he does not come within the rule of a bona fide purchaser for value without notice.

This record does show that the plaintiff, in good faith, entered into an agreement with Mrs. Enslow on May 28, 1952, by which he agreed to pay her the sum of $20,000.00 for her property, and she agreed to accept that offer. Assuming that she had not, prior to that time, relinquished her right to enter into such an agreement, it was a valid contract, subject to specific performance. The consideration was adequate, and there was no testimony to indicate

that Mrs. Enslow did not have the mental capacity and the desire at that time to sell her property to the plaintiff. Upon that issue, the plaintiff's wife testified that Mrs. Enslow had informed her that it was her desire that the McGinnis' should have the property, and she was corroborated by a witness for the defendant. The rights of the defendant Foster Foundation then are predicated wholly upon the transactions which transpired prior to May 28. The execution of the deed by Mrs. Enslow, on June 4 or 5, was of no significance, nor was her actual entry into the Home on June 11. The defendant Foster Foundation, therefore, must stand or fall upon its contention that a valid and complete agreement came into being between it and Mrs. Enslow on the Sunday following April 10 when she was orally informed that the Board of Trustees had approved her application of November 4, 1951. A further examination of the application which Mrs. Enslow signed is in order. In that regard, these two paragraphs are pertinent:

> "If *admitted* as a resident of Foster Memorial Home, I agree to obey all its rules and regulations, as the same are or shall be prescribed from time to time.

> "In consideration of my *admission as a resident* of Foster Memorial Home, I hereby convey, assign and transfer to the said Foster Foundation all property, both real and personal, of which I am the owner, and agree to convey, assign and transfer to said Home all property, both real and personal, which I shall hereafter acquire, or to which I shall become entitled (this conveyance, assignment and transfer to take effect *on my admission* to the said Home)." (Italics Supplied.)

The word "admission" used in this instrument, and the effect which the parties intended that it should have, becomes of vital importance. The Foundation contends that the requirement of admission was complied with when the application was approved by the Board, and Mrs. Enslow was informed of that action. The plaintiff maintains that it referred to a physical admission to the Home

which did not occur until June 11. This Court holds that it means the latter.

The phrases "if admitted as a resident", "my admission as a resident", and "on my admission to the home" clearly indicate an actual physical residency at the Home.

The testimony of Mr. V. G. Bryan, Secretary-Treasurer of the Foster Foundation, which is in the nature of an explanation of the agreement between the parties, strongly supports that conclusion. He was asked these questions, and made the following answers, relative to the obligation of an applicant prior to actually establishing permanent residency:

"Q. Now, if they go down there and they stay all night, or 2 or 3 days, and they don't like the place, then they don't have to go down and stay, do they?"

"A. No, sir, they do not."

"Q. And she wouldn't have had to have gone down there if she said she didn't like it?"

"A. That's right, if she didn't want to come she didn't have to go."

"Q. And you wouldn't have held her to any agreement?"

"A. There is no obligation when you apply down there, no obligation whatsoever."

"Q. And there is no obligation until she goes there?"

"A. No, that isn't right. There is no obligation after we notify her that she can come there, because after she has visited then there is no obligation if she says she doesn't want to come in."

Mr. Agee, Vice-President of the Foundation, and one of its directors, referring to the execution of the deed, stated: "She never would have come in that Home if she hadn't signed it, absolutely.", and, "* * * She wouldn't have come down there by any persuasion of ours. We don't have to beg anybody to come down there. We have

more than we can take care of. It is one of the finest institutions in the country."

The Foster Foundation, however, contends further that the agreement was validated shortly after April 10, and that the things to be done thereafter by the parties were minor to the main agreement, and being conditions subsequent, did not affect the validity of the original contract. While the "practical construction" of contracts is limited to those that are ambiguous, a contemporary construction, placed upon a contract by the parties thereto, is entitled to great weight, and may be the controlling factor in determining the meaning of equivocal or doubtful provisions.

In 4 M. J., Contracts, § 47, several West Virginia cases are cited in support of the following statement: "In case of doubt and ambiguity in the terms of a contract, a court will follow the interpretation placed thereon by the parties themselves. Such construction is not only entitled to great weight, but is often conclusive.* * *"

Although this principle is predicated upon the assumption that a valid contract exists, certainly the principle is equally applicable to the construction placed upon proposals and counter-proposals in the negotiations between the parties prior to effectuating the actual agreement. The testimony of Bryan and Agee, the officials of the Foster Foundation who carried on the negotiations with Mrs. Enslow, were statements against interest, and for that reason were admissible and pertinent upon the crucial question involved in this case as to whether a contract had been entered into between Mrs. Enslow and the Foundation prior to May 28. Mrs. Enslow neither appeared as a litigant nor as a witness, although at the time of the trial she was a resident of the Home in the City of Huntington where the trial was held, and no explanation is given by the defendant Foster Foundation for her failure to appear.

A succinct definition of a condition subsequent is found in Black's Law Dictionary, Third Edition, at Page 390,

citing many cases as authority for it: "* * * A condition subsequent is one annexed to an estate already vested, by the performance of which such estate is kept and continued, and by the failure or non-performance of which it is defeated; or it is a condition referring to a future event, upon the happening of which the obligation becomes no longer binding upon the other party, if he chooses to avail himself of the condition.* * *" A condition subsequent presupposes a conveyance or a valid agreement. In this case, there could be no condition subsequent, prior to a final consummation of the negotiations between the parties, and a meeting of the minds which resulted in a binding contract. There was no such contract between Mrs. Enslow and the Foundation prior to May 28. The essential elements of certainty and completeness were absent. There is no evidence in this record to show that Mrs. Enslow had decided, after April 30 and before May 28, to enter the Home. There is no evidence to show that the Foster Foundation had approved or disapproved her entry subsequent to April 30. There is nothing in this record to show that Mrs. Enslow had been informed that the admittance fee was $1,000.00, and that she had agreed to pay it. There is nothing in this record to show that she had agreed to accept, after she became a resident of the Home, spending money in the amount of three per cent of any sum which she turned over to the Foundation in lieu of the provisions in the written application for admittance to the effect that "the net income from said property to be paid to me during my lifetime." There is, on the contrary, proof that there was no agreement between the parties as of that date. The facts that Mrs. Enslow refused to sign the deed of May 25, and asked for time to discuss the matter with her attorney, and that the Foundation, by its vice president, Agee, wrote her, under date of June 4, as heretofore stated, clearly indicate that at that time there was no contract. If Mrs. Enslow had, on May 28, informed the Foster Foundation that she had not been satisfied with her test visit to the Home, and did not elect to become a resident, no court of equity would have

decreed specific performance of the alleged agreement theretofore entered into between the parties. The Foundation had suffered no damages. The testimony of the defendants shows that there was a long waiting list of applicants. Mr. Agee stated: "We have more than we can take care of."

"The fundamentals of a legal contract are competent parties, legal subject matter, valuable consideration and mutual assent. There can be no contract if any of these elements are lacking. * * *. The situation must be such that either party could sue for specific execution of it. There must be mutuality of remedy.* * *" *Virginian Export Coal Co.* v. *Rowland Land Co.*, 100 W. Va. 559, 131 S. E. 253. No court of equity would have required Mrs. Enslow to enter the Home against her will, or to convey her property to the Foundation as negotiations stood between the parties on May 28.

The decisions of this Court in *Fluharty* v. *Fluharty*, 54 W. Va. 407, 46 S. E. 199, and *Carter* v. *Reserve Gas Co.*, 84 W. Va. 741, 100 S. E. 738, involving the conveyance of real property in consideration of support and maintenance for the life of the grantor, are not applicable. In neither of those cases, nor in any other case, has specific performance been decreed or damages awarded for the failure of a grantor to convey his property and accept support and maintenance from the grantee. Certainly, no such agreement would be enforced which provided that prior to the execution of the deed of conveyance, the grantor would have the privilege of making a test visit to the home of the grantee to determine whether compatibility existed between himself and the members of the grantee's family, and before a decision was made subsequent to the visit, the grantor had entered into a contract of purchase with a third party.

A valid agreement did come into existence between Mrs. Enslow and the Foundation subsequent to May 28, and whether it was on June 4, when she executed the deed, or on June 11, when she actually was admitted to and began

living in the Home, it is unnecessary to decide. The provision in the agreement relative to the six months probationary period did not affect the validity of the agreement between her and the institution. That was a condition subsequent, comparable to the condition subsequent contained in the conveyances in *Fluharty* v. *Fluharty, supra,* and other similar cases. If the agreement between the plaintiff and Mrs. Enslow had been executed subsequent to June 4, or certainly June 11, the plaintiff not being a complete purchaser, even though he was without notice, such agreement would not have prevailed over the transaction between Mrs. Enslow and the Foster Foundation which had, at that time, been consummated. The conveyance of June 4 to the Foster Foundation was subordinate to the agreement of May 28 between the plaintiff and Mrs. Enslow. It is unfortunate for Mrs. Enslow and the Foundation, but of no legal or equitable significance that, subsequent to June 4, the Foster Foundation was able to enter into an agreement with George Norvell, Jr., son of the President of the Foster Foundation, in which he agreed to pay the sum of $21,375.00 for the Enslow property.

The trial court's decree makes no reference to the removal of the mortgage from the Enslow property, by the payment of the indebtedness in the sum of $5,500.00 by the Foundation to the Huntington National Bank, for which the Foundation should be reimbursed. Otherwise, the decree of the Circuit Court of Cabell County is affirmed.

*Affirmed.*

GIVEN, PRESIDENT, dissenting:

Since the majority opinion concedes that appellee is not a bona fide purchaser for value, in that he had not paid the agreed purchase price at the time he acquired knowledge of the rights of appellants, this dissent goes only to the question of whether there was created a valid agreement between Mrs. Enslow and the Foster Foundation.

It is my view that there was a valid offer made by Mrs. Enslow, and that the offer was duly accepted by the Foster Foundation before any rights of appellee accrued. The majority concedes, as I understand the opinion, that the judgment should be for appellants if, in fact, there were an offer and an acceptance.

In her written application for admission to the Home, dated November 4, 1951, Mrs. Enslow stated: I "* * * hereby make application to be admitted as a resident of the Foster Memorial Home", and "for this purpose" gave detailed statements as to her age, health, relatives and properties. She agreed that "If admitted as a resident of Foster Memorial Home, I agree to obey all its rules and regulations, as the same are or shall be prescribed from time to time". She further agreed to assign and convey her property to the Foster Foundation if admitted thereto, the "assignment and transfer to take effect on my admission to the said Home". She also stated in the application that "I am able to pay the admission fee and will pay the same on my admission". At the time of execution and delivery of the application both parties understood that Mrs. Enslow could not be then accepted by the Foster Foundation, for the reason there was no available room at the Home, and that the application could not be finally acted upon until room in the Home became available. When received by the Foster Foundation, the application was indorsed "Put on waiting List at Meeting of 11/15/51".

Subsequently, vacancies occurred at the Home and, on April 10, 1952, the Board of Directors of the Foster Foundation acted on the application of Mrs. Enslow and made record of the action in this language: "Since there have been 3 deaths this year so far the Board voted to notify Miss Osgood of Ceredo and Mrs. Enslow of Huntington that they be admitted to the Home subject to the regulations pertaining to such admittance." Mrs. Enslow was duly notified of the action and later went to the Home and was examined by the physician of the Home, who found her to be "in very good condition". Though Mrs. Enslow returned to her home for the purpose of making

necessary arrangements, it appears never to have been doubted by either her or the Foster Foundation that she had been accepted and admitted as a resident of the Home. Mr. Bryan, who had served as Secretary-Treasurer of the Foster Foundation for approximately eight years, was asked the following question, to which he made the following answer: "Q. Did you tell her [Mrs. Enslow] then that her application had been approved and that she was admitted? A. Yes, sir". It is conceded that Mrs. Enslow, pursuant to the application and its acceptance, became and remains a resident of the Home.

From these facts it seems clear and certain that Mrs. Enslow, in the written application, offered to convey to the Foster Foundation the property involved and described in the application, for the consideration that that institution would admit her to the Home, according to the "rules and regulations, as the same are or shall be prescribed from time to time". It appears just as clear and certain that the offer was accepted by the Foster Foundation without any reservations or qualifications, other than such as were provided by the "rules and regulations". The parties so understood the transaction, and acted in accordance with that understanding. As soon as room was available in the Home, the application was favorably acted on by the Board of Directors, Mrs. Enslow was notified, went to the Home, submitted to the physical examination required by the rules and regulations, became a resident of the Home, and remains a resident thereof. Thus, on the acceptance, a valid and enforceable contract was brought into existence. See *Conservative Life Insurance Co.* v. *National Exchange Bank of Wheeling,* 118 W. Va. 44, 188 S. E. 755; *Morgan-Gardner Electric Co.* v. *Beelick Knob Coal Co.,* 91 W. Va. 347, 112 S. E. 587; *Wood & Brooks Co.* v. *Hewit Lumber Co.,* 89 W. Va. 254, 109 S. E. 242, 19 A. L. R. 467; *Hallauer* v. *Fire Association of Philadelphia,* 83 W. Va. 401, 98 S. E. 441; *Parks* v. *Morris, Layfield & Co.,* 63 W. Va. 51, 59 S. E. 753; *Shrewsbury* v. *Tufts,* 41 W. Va. 212, 23 S. E. 692; 4 M. J., Contracts, Section 17, et seq.

As above noticed, Mrs. Enslow agreed in the offer that "this conveyance, assignment and transfer to take effect on my admission to the said Home". I see no reasonable basis for construing this language to mean that Mrs. Enslow must finally and physically be an occupant of the Home before acceptance could be accomplished. To give the language that meaning would seemingly place the sole power of acceptance in the offeror, a situation, at the least, most unusual. But even so, it is clear that Mrs. Enslow was physically in the Home, pursuant to the acceptance, prior to the accrual of any rights of appellee.

It is further contended that certain matters or rights of the offeror and offeree were not made sufficiently definite by the offer and acceptance, such as the admittance fee, or interest on any sum of money turned over to the Foster Foundation by Mrs. Enslow. But such matters were governed by the "rules and regulations" of the Foster Foundation, which rules and regulations Mrs. Enslow expressly recognized and agreed to abide by in the application. Whatever rights or liabilities might accrue as to Mrs. Enslow or the Foundation because of failure to comply with any such rules or regulations, subsequent to acceptance, could have no weight in determining whether an acceptance had, in fact, been made. Neither am I as certain as the Court seems to be that the Foster Foundation would not have been entitled to equitable relief, had Mrs. Enslow, without fault on the part of the Foster Foundation, refused to perform the contract. It should be remembered here, however, that any problematical equities arising between Mrs. Enslow and the Foster Foundation, because of violations of the contract by either party, can not affect the equities of third parties, the grantee of the Foster Foundation, or the grantee of Mrs. Enslow. Neither does the fact that the Foster Foundation could not have forced Mrs. Enslow to reside at the Home have any bearing on the sufficiency of the offer and acceptance. See *Wood v. Snodgrass,* 116 W. Va. 538, 182 S. E. 286.

In its true perspective, the contract resulting from the offer and acceptance is simply a contract for support and

maintenance. For certain considerations, including the property involved, the Foster Foundation became bound to support Mrs. Enslow for the remainder of her life, at the Home provided and operated by the Foundation. Numerous cases of this Court hold such contracts enforceable. See *Auvil* v. *Shaffer,* 74 W. Va. 301, 81 S. E. 1054; *McCartney* v. *Bolyard,* 22 W. Va. 641; 12 C. J. S., Cancellation of Instruments, Section 30. The rights of parties to such contracts are governed by the same tests and rules that govern the rights of parties under other contracts. Such contracts are often attacked on such grounds as want or failure of consideration, or refusal of one of the parties to perform, but those questions have nothing to do with the creation or existence of a contract. Therefore, it is believed that any question relating to the rights of the parties to have specific performance, as discussed in the majority opinion, can have no bearing on whether a contract was created in the instant case. Specific performance, of necessity, presupposes the existence of a valid contract.

Being of the view that the application of Mrs. Enslow constituted a valid offer, that the Foster Foundation accepted the offer without reservation and that the parties immediately, and at all times, treated the offer and acceptance as a valid contract, I respectfully dissent. I am authorized to say that Judge Lovins concurs in the views expressed in this dissent. We would reverse the final decree of the trial court.