## KENDALL v. TRAVELERS INS. CO.
### Civil Action No. 1–F.

District Court, N. D. West Virginia.
July 25, 1942.

Louis D. Meisel and J. Harper Meredith, both of Fairmont, W. Va., for plaintiff.

Steptoe & Johnson, James M. Guiher, and Edward W. Eardley, all of Clarksburg, W. Va., for defendant.

HARRY E. WATKINS, District Judge.

This is an action to recover permanent and total disability benefits, upon an ordinary life insurance policy carried by Cassie B. Kendall from March, 1928, to the date of his death, in February, 1940, and to recover premiums paid by him on the policy from 1929 to 1934, inclusive, plus interest. Suit was instituted by the plaintiff, as administrator of the estate of his deceased father, in the state court on December 28, 1940, and subsequently removed to this court, by reason of diversity of citizenship, where it was tried by the court in lieu of a jury.

The policy in suit was issued in 1924 upon conversion of an earlier term insurance policy taken out in 1923. It provided for life insurance coverage of $3,000 and disability benefits of $30 per month if the insured became totally and permanently disabled prior to the anniversary date of the policy (February 1, 1931) nearest the sixtieth birthday of assured. Assured died February 1, 1940. The face amount of the policy was paid to the beneficiary. The administrator claims that his father became totally and permanently disabled prior to February 1, 1931, and should have been paid disability benefits for a period of almost ten years prior to his death. The defendant denies permanent and total disability prior to February 1, 1931, but says that if such disability did exist, plaintiff is estopped from claiming such disability because of the lapse of almost ten years before filing suit, and because of other conduct of assured, as the result of which defendant has been greatly prejudiced in its defense, by death of its assured and most of its material witnesses.

Assured was a real estate dealer, at Mannington, W. Va., except for a period of two years (1921–1923) when he managed a garage business in Elkins, W. Va. On January 27, 1923, assured applied for the original policy, stating in his written application that he had never had tuberculosis or any other disease within a period of five years. The medical examiner reported that his lungs were "normal". There is no very definite evidence as to just when the assured terminated his real estate activities, but he continued to manage and rent several parcels of real estate owned by him or his family until a few years before his death. Assured sold his garage business in Elkins in September, 1928, for $20,000 and returned to Mannington. He had an average monthly income of about $100 from real estate.

On December 13, 1929, he filed a claim for disability benefits, claiming that he had been totally and permanently disabled since March 15, 1928, because of a "general breakdown". An adjuster by the name of Conley investigated the claim, and reported the claim unfavorably, as a case of retirement rather than total disability. On December 14, Drs. M. F. Hamilton and D. D. Hamilton, the assured's attending physicians, filled out and sent to the defendant a printed form of "Attending Physician's Statement". No mention was made of tuberculosis, but it said that Kendall would be disabled from "hard work" because of a chronic cough and general weakness. Conley testified that later he went to see Dr. D. D. Hamilton, to ask him what he meant by "hard work" and the doctor explained that he meant insured would be unable to do oil field work—only able to do light work that was not confining. On December 23 Dr. Frank E. Flowers, defendant's medical examiner at Mannington, examined assured and reported in writing as follows: "Cannot see where (he) is at present disabled more than a slight degree * * *. After careful examination of this man, it seems to me he is in as good physical condition as the average man of his age. He is a chronic asthmatic, but I do not believe there is sufficient disease to seriously disable him from performing most of the duties of his occupation as a real estate dealer". Dr. Flowers died in March, 1939. The defendant offered this signed statement, to which plaintiff objected, and it became necessary for the court to exclude this important evidence. It amounted to hearsay and was not such a statement as to come within any exception to the hearsay rule. Wigmore on Evidence, Vol. 3, Sec. 1576.

About February, 1930, Conley called at the home of assured and informed him that his disability claim had been rejected. From that day to the time of his death ten years later, Kendall never again mentioned or asserted any disability claim. Some time later the defendant closed its file, and prior to 1940, in accordance with usual practice, defendant's branch office file was destroyed. Although the policy provided for waiver of premiums when the insured became totally and permanently disabled, Kendall continued to pay the premiums on the policy for several years, until the premium falling due February 1, 1936, when, at assured's request, the policy was placed upon extended term insurance for the sum of $2,500 to expire on March 27, 1943. It is stipulated that these premiums were made by assured to defendant company "without any objections or protests being indicated by Kendall to defendant". In February, 1933, he applied for and secured a loan of $500 upon the policy.

In 1939 Arthur G. Clayton, defendant's agent at Mannington, died. Dr. M. F. Hamilton died in 1933. Assured died February 21, 1940. Dr. D. D. Hamilton certified that the cause of death was uremic poisoning resulting from diseased prostate.

An autopsy was performed at the request of the family by Dr. D. D. Hamilton and a Dr. Frye. No notice of the autopsy was given to defendant. The doctors both testified that in addition to the diseased prostate, they found evidence which they believed to reflect a tubercular condition.

Proof of death was made and the original policy surrendered on March 5, 1940, without mention of any disability claim. On March 19, 1940, the insured's widow acknowledged receipt of the check for life insurance coverage, but stated that "I believe the estate of my husband has a claim against your company on account of disability clause in policy No. 1035513". No further proofs of claim were submitted to defendant, and this suit was instituted in December, 1940.

Dr. D. D. Hamilton, the chief witness for plaintiff, testified that in his opinion assured had an active tuberculosis since before 1919, but this statement is at variance with all the other medical evidence. The examination and written report of Dr. Golden in 1923 denied existence of tuberculosis. Such disease was not mentioned by any of the three doctors, including Dr. D. Hamilton himself, who examined Kendall in 1929 for the specific purpose of fixing the cause of any disability then existing. Dr. Hamilton admits that he treated assured throughout his illness, but never referred him to a tuberculosis specialist or to a sanitarium for observation or treatment. It would seem that Dr. D. D. Hamilton based his statement as to tuberculosis almost entirely upon the autopsy conducted in 1940. Both Dr. Hamilton and Dr. Frye admit that if he had tuberculosis in 1940 it is impossible to fix the date of its inception. Dr. Hamilton testified from memory and was unable to fix dates very definitely after lapse of so many years. The plaintiff offered a number of friends who were asked to testify as to their recollection of his condition from time to time more than ten years previous. Their evidence was to the effect that his condition had grown gradually worse up to the date of his death in 1940. Most of them indicated that it was between 1930 and 1935 that they first noticed any failure in his health. These witnesses made it clear that assured had not done much in the way of actual work, except handle a little real estate, since returning to Mannington in 1923, and none of them could say definitely when such activities ceased. Assured's widow, with whom he lived until his death, was not called as a witness.

Even though the examination and written report made by Dr. Flowers in 1929 be excluded, I am still of the opinion that the plaintiff has failed to prove by a preponderance of the evidence that assured was totally and permanently disabled prior to February 1, 1931. The recollection of the witnesses after so many years was necessarily so uncertain and indefinite as to carry little weight. There is no uncertainty, however, about the attitude of assured toward his own claim for disability. Defendant rejected the claim in February, 1930. Assured apparently abandoned his claim, and never again asserted it, although he lived for ten years thereafter. On the contrary, his subsequent conduct with regard to this policy was wholly inconsistent with permanent and total disability. Payments of future premiums "without any objections or protest", the borrowing of $500 upon the policy in 1933, and requesting that the policy be placed on extended term basis in 1936, without ever again mentioning the disability claim, are strong evidence that assured did not himself have much faith

in his disability claim. These circumstances have much weight in a case like this where so much "recollection" evidence of the witnesses is uncertain and indefinite because of the lapse of so many years. The evidence indicates that assured abandoned his claim because he was convinced that he could not prove permanent and total disability prior to February 1, 1931. No other reasonable ground or excuse was shown for assured's acquiescence in the rejection of his claim. I am not impressed with plaintiff's contention that assured's health was such as to excuse and explain his conduct. A just claim for so substantial a sum is not ordinarily neglected in this fashion. Wren v. Wehn, 1941, 122 W.Va. 625, 12 S.E.2d 809. The assured was an intelligent man and retained his mentality until shortly before his death. His son, the plaintiff in this action, was in the life insurance business for a period of time about 1930.

■ These conclusions make it unnecessary to decide the question of estoppel. However, I am of opinion that plaintiff is likewise estopped to assert this claim at this late date. Defendant believed, and had reasonable ground to believe, that the claim had been abandoned after its rejection in 1930. Defendant relied, and had the right to rely upon the course of conduct of assured. The prejudice resulting to the defendant by reason of assured's conduct, and the long delay of more than ten years in filing suit is clear and convincing. The insurance company was entitled to examine its insured while he was alive. Hinkley v. Penn Mutual Life Ins. Co., D.C., 37 F.Supp. 1018. Assured was dead and buried before the company had any notice of the renewed claim. It was not given notice of the autopsy and had no opportunity to be represented. Dr. Flowers, who examined assured when the disability claim was made, was available to defendant for nine years after the claim was rejected. He died in 1939 and, over objection of plaintiff, even his written statement of findings, is rendered inadmissible. This was defendant's only medical examination of assured. Had Dr. Flowers been alive, he could have testified at length and in detail concerning his examination, in addition to his written report. The death of Arthur G. Clayton, defendant's agent at Mannington, the destruction of company records in the usual course of business, the inability of witnesses to recall in 1940 what assured's condition was in 1931 from their casual observations of him, rendered it impossible for defendant to fairly present its side of the case. Inexcusable delay in filing suit and affirmative conduct of assured, tending to lull the defendant into a sense of security, are responsible for this substantial prejudice to the insurance company. In such cases the courts have refused to permit recovery, sometimes basing their decision upon "laches", and sometimes on estoppel. Bennett v. New York Life Ins. Co., 1941, 197 S.C. 498, 15 S.E.2d 743; Northwestern Mutual Life Ins. Co. v. Lowry's Adm'x, Ky. 1892, 20 S.W. 607; Michelson v. Equitable Life Assurance Society, 1936, 161 Misc. 697, 292 N.Y.S. 796; McLawhorn v. American Central Life Ins. Co., 1935, 208 N.C. 709, 182 S.E. 139.

■ There are many West Virginia cases in which this principle has been applied. Jenkins v. New York Life Ins. Co., 1940, 122 W.Va. 73, 7 S.E.2d 343; Milam v. Equitable Life Assurance Society, 1936, 117 W.Va. 77, 183 S.E. 865; Maroney v. Prudential Ins. Co., 1940, 122 W.Va. 327, 9 S.E.2d 872. All of these are cases in which no proof of claim was filed, and plaintiff seeks to distinguish them from the case at bar on that point. It seems to me that the same rule of estoppel must apply to an abandoned claim as has been applied in West Virginia where no proof of claim was filed. A proof of claim long abandoned and discarded by the parties concerned becomes nudum pactum. Conservative Life Ins. Co. v. National Exchange Bank, 1936, 118 W.Va. 44, 188 S. E. 755. There is no more reason to allow assured to abandon a rejected claim for more than ten years, and then rely upon it in suit as "due proof", than there is to permit assured to wait for ten years after inception of disability to file proof of claim. If substantial prejudice to the insurance company has resulted, he is precluded from recovery. This principle was applied in Bennett v. New York Life Ins. Co. There a proof of disability claim was filed, and rejected in 1932. Plaintiff was held to acquiesce in the rejection by his failure to file suit and to continue payment of premiums. Recovery was denied, and the court said [197 S.C. 498, 15 S. E.2d 749]: "Through the silent acquiescence of and payment of premiums by the respondent for a period of years, the appellant was lulled into inaction, whereas as a matter of common knowledge the appel-

lant would have made inquiries and investigations from time to time had it been advised or given cause to believe that the respondent considered that he was disabled within the meaning of the policy, * * *".

The South Carolina Court further added: "* * * Any other rule, in this State, would put it in the hands of the claimant to furnish any flimsy so-called 'due proof,' and when the company declared it insufficient, wait until the opportunity for the company to show the falsity of the claim has passed, as was done in this case, and then bring action on it * * *".

Defendant's motion for judgment, made at the conclusion of the trial, is sustained. An order may be entered accordingly.