## BERCAW v. ALLIED PAPER CORPORATION.

### DECISION OF THE COURT.

1. APPEAL AND ERROR—EMPLOYMENT CONTRACT—INDEMNITY.

Judgment for plaintiff for sums remaining unpaid on employment contract, rendered against defendant-appellee, and judgment for defendant-appellee against defendant-appellant on indemnity agreement are affirmed.

### SEPARATE OPINION.
### DETHMERS, KELLY, AND O'HARA, JJ.

2. PLEADING—LIMITATION OF ISSUES—APPEAL—INDEMNITY AGREEMENT.

Appeal from judgment against defendant-appellant in favor of defendant-appellee on indemnity agreement did not entitle defendant-appellant to relief on appeal against plaintiff, where no appeal was taken from the judgment in favor of plaintiff.

---

REFERENCES FOR POINTS IN HEADNOTES

[2] 5 Am Jur 2d, Appeal and Error § 923.
[3–5] 36 Am Jur, Monopolies, Combinations and Restraints of Trade § 57.
Enforceability of restrictive covenant, ancillary to employment contract, as affected by duration of restriction. 41 ALR2d 15.
Statutes prohibiting restraint on profession, trade, or business as applicable to restrictions in employment or agency contracts. 3 ALR2d 522.
[6] 27 Am Jur, Indemnity §§ 11, 12.
[7] 5 Am Jur 2d, Appeal and Error § 849.
[8] 5 Am Jur 2d, Appeal and Error §§ 594, 597.
[9, 10] 6 Am Jur 2d, Assignments § 93.
[11] 27 Am Jur, Indemnity § 22.
[12] 5 Am Jur 2d, Appeal and Error § 594.

3. CONTRACTS—CONSTRUCTION—RESTRAINT OF TRADE.

Courts strictly interpret bargains or contracts restricting competition and are inclined to find that the particular act complained of does not constitute a breach of the restrictive agreement (CL 1948, § 445.761).

4. SAME—RESTRAINT OF TRADE—CONSTRUCTION.

Employment contract, construed as an agreement not to accept employment with any competitor of employer or subsidiaries for a given period of time, held, to be reasonable and enforceable (CL 1948, § 445.761).

5. SAME—RESTRAINT OF TRADE—CONSTRUCTION.

Interpretation of contract under which agreement not to compete extended to any assignee of employer is rejected, since it would make contract unreasonable and void (CL 1948, § 445.761).

6. SAME—ILLEGALITY—ASSERTION BY INDEMNITOR.

Appellant who agreed to hold obligor under a contract harmless thereunder is in no position to assert illegality of provision of contract because it was for tax-evasion purposes.

7. APPEAL AND ERROR—DIRECTED VERDICT—PREJUDICE.

Prejudicial error as to defendant-appellant was not committed by trial court by taking case from jury at close of all the evidence after plaintiff, defendant-appellee, and defendant-appellant had all asked for directed verdicts, plaintiff for sums due on alleged employment contract, defendant-appellee in denial of liability thereunder, and defendant-appellant in denial of liability under its separate agreement to hold defendant-appellee harmless under the employment contract, where trial court did determine that defendants were competitors and plaintiff's last employment with defendant-appellee placed him in a position of competing with the appellant.

SEPARATE OPINION.

T. M. KAVANAGH, C. J., and BLACK, J.

8. APPEAL AND ERROR—QUESTIONS REVIEWABLE.

New issue not pleaded at pretrial nor added by amendment may not be considered on appeal.

SEPARATE OPINION.

SOURIS, SMITH, and ADAMS, JJ.

9. CONTRACTS—INCONSISTENT CLAIMS—ASSIGNMENT.

*Appellant may not on appeal claim to be a beneficiary of assignment, where in pleadings, at pretrial, and by its president's testimony at trial, it asserts it had not accepted an assignment of contract.*

10. SAME—ASSIGNMENT—ACCEPTANCE.

*Appellant would not be entitled to claim any benefits under the assignment, where it never accepted an assignment of the contract.*

11. INDEMNITY—LIABILITY.

*Indemnitor was properly found liable to indemnitee, where latter was found liable to plaintiff under the employment contract, sued on and which was the subject of liability in the indemnity agreement.*

12. APPEAL AND ERROR—QUESTIONS REVIEWABLE—PLEADING—TAX-EVASION.

*Issue that provision of an employment contract was illegal because it was a tax-evasion scheme is not considered on appeal, where not pleaded and not considered or decided by the trial judge (GCR 1963, 118.301).*

Appeal from Kalamazoo; Sweet (Lucien F.), J. Submitted June 8, 1965. (Calendar No. 22, Docket No. 50,428.) Decided April 5, 1966.

Declaration by William R. Bercaw against Allied Paper Corporation, a corporation, and Western Tablet & Stationery Corporation, a corporation, for breach of a contract to employ. A trial before a jury, all parties requested directed verdicts. Trial judge discharged the jury and entered a judgment for plaintiff against defendant Allied Paper Corporation on the contract to employ. Judgment also entered for Allied Paper Corporation against defendant Western Tablet & Stationery Corporation on a "hold harmless" clause in a contract for the sale of Allied Paper Corporation's assets to Western

Tablet & Stationery Corporation. Defendant Western Tablet & Stationery Corporation appeals. Affirmed.

*Schaberg, Huff, Deming & Hughey* (*Roland L. Huff,* of counsel), for plaintiff Bercaw.

*Paulson, Bennett, Palmer & Lewis* (*Robert A. Palmer,* of counsel), for defendant Allied Paper Corporation.

*Howard & Howard* (*William J. Howard,* of counsel), for defendant Western Tablet & Stationery Corporation.

KELLY, J. Plaintiff herein, prior to October 15, 1957, was president of Mercury Envelope Company. Allied Paper Corporation purchased all the stock of Mercury Envelope Company and as a part of such sale plaintiff and Allied entered into an agreement that plaintiff Bercaw's employment would be continued from October 15, 1957 to October 14, 1962, at the rate of $28,000 per annum, either party to have the right to terminate the agreement with compensation payable at $12,000 per annum thereafter to October 14, 1962.

In August, 1958, Allied Paper Corporation sold and transferred all the capital stock of Mercury Envelope Company to Allied-Albany Paper Corporation and Allied-Albany promised and agreed to perform the terms and provisions of the agreement entered into between plaintiff and Allied Paper Corporation.

Sometime prior to December 29, 1958, Allied-Albany sold and transferred to Western Tablet & Stationery Corporation, appellant herein, all of the assets of Mercury Envelope Company. Western Tablet & Stationery Corporation, on the same date,

entered into an agreement whereby Western agreed to indemnify and save harmless Allied-Albany Paper Corporation and Allied Paper Corporation from liability by reason of plaintiff's employment contract.

Plaintiff continued in the employ of Western Tablet & Stationery Corporation until March 1, 1959, at which time he exercised the termination provision of the agreement. While employed by Western, plaintiff was paid at the rate of $28,000 per annum. After March, 1959, when plaintiff left appellant's employment, he was paid at the rate of $1,000 per month.

In March, 1960, plaintiff accepted employment with Allied Paper Corporation at the rate of $40,000 per annum. Western Tablet & Stationery Corporation terminated payment of compensation to plaintiff on July 1, 1960. Allied Paper Corporation also refused to make such compensation payments. Plaintiff brought suit under the 1957 agreement with Allied Paper Corporation to recover against both Allied Paper and Western Tablet & Stationery Corporation, seeking damages at the rate of $1,000 per month from July 1, 1960 to October 14, 1962, the expiration date of the employment contract.

Trial was had before a jury. At the conclusion of proofs *all* parties asked for directed verdicts. The trial judge was of the opinion that such motions removed the case from the jury and he, therefore, discharged the jury.

In a written opinion, the court said:

"This court finds itself in agreement with the contention of the defendant Western, that as an assignee of the defendant Allied it did not accept the responsibilities and obligations of the contract with the plaintiff; rather, defendant Western agreed to hold defendant Allied harmless from any liability to the plaintiff arising under the terms of its contract with plaintiff. Plaintiff was entitled to receive $1,000

per month from the time that such payments ceased until the end of the term of the contract, to-wit: October 11, 1962."

Judgments were accordingly entered: One on March 25, 1963, in favor of Bercaw against Allied Paper Corporation in the amount of $27,500, and another on April 17, 1963, in favor of Allied Paper Corporation against Western Tablet & Stationery Corporation for a like amount.

Western Tablet & Stationery Corporation (hereinafter referred to as Western) entitled its appeal: "William R. Bercaw, *plaintiff and appellee,* v. Allied Paper Corporation, a corporation and Western Tablet & Stationery Corporation, a corporation, *defendants and appellants.*"

The brief of Allied Paper Corporation (hereinafter referred to as Allied) carries the title: "William R. Bercaw, *plaintiff and appellee,* v. Allied Paper Corporation, a corporation, *defendant and appellee,* and Western Tablet & Stationery Corporation, a corporation, *defendant and appellant.*"

Plaintiff Bercaw filed a "statement of the plaintiff, William R. Bercaw, as to reply of appellant, Western Tablet & Stationery Corporation," and entitled it: "William R. Bercaw, *plaintiff* v. Allied Paper Corporation, a corporation, *defendant and appellee,* and Western Tablet & Stationery Corporation, a corporation, *defendant and appellant.*"

We quote from the "statement of the plaintiff," as follows:

"The plaintiff, Bercaw, had merely sold a small envelope company (Mercury Envelope Company) to the appellee, Allied Paper Corporation, and incident thereto had entered into an employment agreement with Allied, with the payments under this agreement, rather than involving tax evasion being taxed at the highest tax level. He in no way participated in any

of the subsequent negotiations involving the sale of the Mercury Envelope Company as between Allied and Allied-Albany or between these parties and Western Tablet & Stationery Corporation.

"Although the appellant has injected into the case a set-off or counter-claim based on certain payments made by it to the plaintiff, Bercaw, it has throughout taken the position that these payments were made under its indemnity agreement with Allied and made direct to the plaintiff rather than paid to Allied only as a 'convenience to avoid circuity of payment.' See page 24 of the appellant's brief, where it stated:
\* \* \*

" 'Appellee continued to make payments under exhibit 3[1] directly to the plaintiff since this method had been decided upon between the appellant and Allied-Albany Corporation as a matter of convenience to avoid circuity of payment.'

"As Allied has admitted its liability to plaintiff, it follows that all payments as made by the appellant under its own contention were necessarily payments on account for Allied and for its benefit.

"As the appellant did not appeal the judgment in which the plaintiff was involved but confined its appeal solely to the judgment entered for appellee, Allied, against it on its indemnity agreement and confined the relief as requested to a request for reversal or a new trial as to this judgment, and as appellant in its brief took the position that its payments to plaintiff were on account for Allied and made direct to plaintiff solely for convenience, which necessarily related any claims thereunder solely to the contract relations of these parties, the plaintiff did not file a brief in answer to appellant's brief or participate in the appeal other than to sign such stipulations as were requested by the appellant and appellee.

"In the reply brief of appellant as filed in reply to the brief of appellee, Allied Paper Corporation,

---

[1] Letter of indemnification dated December 29, 1958, from Western to Allied-Albany Paper Company.

the appellant in its argument continues to assert its counterclaim against the appellee, Allied, stating under point 5 on page 24 as follows: * * * .

" 'Appellant should not be held liable to the appellee, but, rather, judgment should be rendered in appellant's favor against appellee and its damages assessed at $3,600 and costs of both courts.' * * * but in the relief prayed for under its reply brief, appellant goes beyond the relief as originally prayed on appeal and asks for judgment against the plaintiff for $3,600.

"The plaintiff, therefore, requests that the claim against him as made in appellant's reply brief be denied."

We are denying appellant Western's request that we enter "judgment for appellant against the plaintiff (Bercaw) for $3,600 and costs of both courts," and in this appeal we shall decide the issue presented by appellant Western's request "that the judgment of the court below be reversed and that the case be referred back to Kalamazoo for a new trial by a jury, or if this court agrees exhibit 3 is unenforceable, a reversal without a new trial with costs to appellant," or appellee Allied's request "that the decision of the circuit court be in all respects affirmed."

Appellant presents the question: "Was the plaintiff's restraining covenant against engaging in a business activity competitive with Allied Paper, its subsidiaries and assigns, unreasonable and void?" and contends that "the plaintiff was not entitled to receive payments under appellant's indemnity agreement (exhibit 3) after he was rehired by Allied."

The covenant under question between appellee Allied and plaintiff Bercaw provided:

"Under such circumstances, Bercaw shall have the right to accept employment with any person, firm or corporation whatsoever, except only that prior to

October 14, 1962, Bercaw shall not engage in any business activity or work for any person, firm or corporation which is competitive with the business of Allied or any of its subsidiaries."

Appellee Allied claims that Bercaw's noncompetition covenant by its own terms is not enforceable as appellant seeks to enforce it, because "the covenant did not require that Bercaw refrain from competitive activity in any particular area of the paper business, or in any geographical area, or in the paper business generally, or in any other business or industry. Bercaw's only promise was that he would not engage in any business, whatever its nature, which was competitive with the Allied Paper Corporation. His performance of the covenant could be measured only with reference to the activities of Allied."

In *Stoia* v. *Miskinis,* 298 Mich 105, 118, we quoted from 5 Williston on Contracts (Rev ed), § 1636, p 4583, and held as follows:

" 'The courts strictly interpret bargains or contracts restricting competition and are inclined to find that the particular act complained of does not constitute a breach of the restrictive agreement.' "

The trial court we believe correctly and ably disposed of this question by calling attention to CL 1948, § 445.761 (Stat Ann 1962 Rev § 28.61), which contains the following statutory prohibition:

"All agreements and contracts by which any person, copartnership, or corporation promises or agrees not to engage in any avocation, employment, pursuit, trade, profession or business, whether reasonable or unreasonable, partial or general, limited or unlimited, are hereby declared to be against public policy and illegal and void."

The lower court then stated:

"In construing this provision of the statute our Supreme Court has held that not all such contracts are illegal and void, but that if such a contract appears to have been made for a just and honest purpose and for the protection of legitimate interests, and is reasonable and not specially injurious to the public, it may be valid and binding. We find many cases wherein a vendor of a business contracts not to compete for a stipulated time thereafter and/or within a stipulated territory, and where found to be reasonable such contracts have been held to be valid and binding. Reasonableness seems to be the determinative factor, assuming an honest dealing, and in this case there is no claim of fraud or deceit.

"It is the contention of the defendant Western that by reason of the assignment of the contract to it, the plaintiff, under his covenant not to compete, thereupon became obligated not to accept employment with any person, firm, or corporation which was competitive with defendant Western. It is the further contention of the defendant Western that plaintiff breached this covenant when he accepted employment with defendant Allied in March of 1960 and continued to work for Allied thereafter.

"If, indeed, the plaintiff's covenant not to work for a competitor should be construed to apply to competitors of any individual, copartnership, or corporation to whom or to which Allied, or its assignee, might assign the contract, the plaintiff might find himself in a most unreasonable and impossible situation. Such an assignee might be a person or firm engaged in a multitude of activities and enterprises, and the plaintiff might then be faced with a situation where he could not seek employment in any field for which he might be fitted or in which he might be skilled. Indeed, a conceivable situation might exist wherein plaintiff would find it impossible to accept any employment whatsoever.

"Should this court place such an interpretation upon the restrictive covenant of the contract, when

coupled with the assignment clause therein provided this court would be saying to the plaintiff that 'Under certain circumstances you have submitted yourself to voluntary servitude and have foreclosed yourself from seeking employment with any person or any firm other than the current and latest assignee of the other party to your contract.' Certainly it cannot reasonably be argued that either party to the contract intended such a result. Such an interpretation would render the contract unreasonable and in violation of the statute above cited and therefore illegal and void. Such an interpretation would not be in accord with common sense.

"It is the conclusion and decision of this court that under the terms of the contract the restrictive covenant prevented, and only prevented, the plaintiff from engaging in any business activity or work for any person, firm or corporation which would be competitive with the business of the defendant Allied, or any of its subsidiaries."

Appellant Western in its second reply brief, brings to our attention under the heading "Restated Issues," the following:

"In their reply brief Appellee, Allied Paper Corporation, sets out two questions it calls 'issues restated for the sake of clarity.' These questions are misleading and not the issue on this point. The real question is as follows:

"*Where the appellant unknowingly and innocently agreed to indemnify the appellee from liability incurred in a contract with plaintiff Bercaw, without knowledge that the contract was for a capital expenditure and in furtherance of a scheme to commit a felony, will the indemnitor appellant be protected upon discovery thereof and relieved from its indemnity obligation?*

"The trial court did not answer this question except by inference.

"Appellant contends a positive answer should be made and it should be *Yes.*"

Appellant states it "did not learn of the Bercaw-Allied Paper Company scheme to commit a felony until after this suit and then amended its answer to ask relief as an innocent victim of the conspiracy" as follows:

"This defendant, by way of further affirmative defense, alleges that said employment agreement in form of exhibit A to the declaration, was an illegal contract and void and enforcement thereof was against public policy in that agreement purported to be a contract of employment but was in fact an agreement for purchase of property from the plaintiff which agreement was in the form of an employment contract for the purpose of Federal tax evasion and this defendant's agreement to indemnify defendant, Allied Paper Corporation from liability thereunder is void and unenforceable."

To sustain appellant's claim that the contract and agreement between Allied and Bercaw was drawn "for the illegal purpose of permitting appellee to evade Federal taxes by expensing off as a full deduction amounts it contracted to pay plaintiff as additional purchase price of plaintiff's property," appellant calls attention to the testimony of appellee's board chairman, Arnold Maremont, as follows:

"*Q.* Was this salary of $28,000 agreed upon between you and Mr. Bercaw?

"*A.* He was receiving $16,000 per year, from the company at that time and we agreed we would continue to pay him $16,000 a year, plus $12,000 a year as additional compensation on the purchase price which had nothing to do with services at all."

By this tax evasion scheme, appellant claims appellee "worked a deliberate fraud on the innocent appellant, not discovered by it until after discovery proceedings in this suit."

Appellee cites *Beals' Estate* v. *Commissioner of Internal Revenue* (CA 2, 1936), 82 F2d 268; *Ull-*

*man* v. *Commissioner of Internal Revenue* (CA 2, 1959), 264 F2d 305; *Carboloy Company, Inc.*, v. *Commissioner of Internal Revenue*, 2 Tax Court Manual 413; *Commissioner of Internal Revenue* v. *Gazette Telegraph Co.* (CA 10, 1954), 209 F2d 926, and contends that:

"The above cases and others cited therein dealing with similar covenants establish the rule that where the parties to a noncompetition covenant allocated by contract a specified value to the covenant, the amount allocated is income to the covenantor and deductible or amortizable expense to the covenantee unless there is a clear showing that the covenant not to compete is of no economic value whatsoever.

"In the present case, William Bercaw was shown by the evidence to be a vigorous and enterprising man with a strong background in the paper business. The Allied Paper Corporation recognized this and the economic threat that Bercaw would pose as a free agent when it insisted upon the noncompetition covenant. In spite of the fact that the Allied Paper Corporation could have, under the cases, paid Bercaw a lump sum for the covenant and amortized the lump sum payment over the life of the covenant for tax purposes, it strengthened its protection by requiring Bercaw's refraining from competition as a condition precedent to payment, thus making Bercaw steadily 'earn' his money."

Appellant was represented by counsel who considered the agreement and advised appellant. Appellant refused to accept an assignment or become a party to the contract, but instead gave its separate agreement to hold appellee Allied harmless. (See footnote 1, supra.)

We agree with appellee that "as a stranger to the contract between Bercaw and the Allied Paper Corporation, appellant is in no position to assert

its illegality. *Newcomb* v. *Ingram* (1933), 211 Wis 88 (248 NW 171)."

The trial court did not err in failing to rule in favor of appellant's contention that because of the tax evasion issue appellant's written guarantee to hold appellee harmless was illegal.

Appellant claims the trial court erred "to the prejudice of appellant in taking the case from the jury after all parties moved for a directed verdict at the close of all the evidence."

In support of this claim, appellant calls attention to the following from the transcript:

*"The Court:* Gentlemen, in view of the motions that all of you have made, I think this removes the case entirely from further consideration by the jury, as I understand the rule.

*"Mr. Howard:* I reserve the right to go to the jury,—

*"The Court:* I am sorry; you didn't reserve the right. * * *

*"Mr. Howard:* — on any question of fact. I have requests to charge filed with the court which reserve the right. * * *

*"The Court:* It is my feeling this reservation comes too late; that upon the motions being made the court has no recourse but to take the case from the jury, and such is the ruling of the court."

Appellee argues that, even if the court was wrong in taking the case from the jury, appellant was not prejudiced, because the court found in appellant's favor that appellant and appellee were competitors and that plaintiff's last employment by the appellee placed him actually in a position of competing with the appellant.

Appellant answers this point of appellee by stating that, while that may be true in regard to the competition question, the more fundamental question, *viz.*, tax evasion, should have been submitted to

the jury. We disagree with appellant's contentions
in this regard and have disposed of the tax evasion
question previously in this opinion.

Appellee has satisfied plaintiff's judgment. The
court did not err in holding that, under the agree-
ment entered into between appellant and appellee,
appellant must reimburse appellee for the moneys
appellee paid plaintiff. Affirmed, costs to appellee.

DETHMERS and O'HARA, JJ., concurred with
KELLY, J.

T. M. KAVANAGH, C. J. (*concurring in result*). I
concur in the result reached by Justice KELLY. I
concur, also, in his disposition of the pertinent legal
questions involved in this case. I do not believe the
tax evasion issue to be properly before the Court.
It was not a part of the pleadings before entry of
the pretrial order. No amendment of the pretrial
order was sought or made. No order of the trial
court permitting amendment of the pleadings after
pretrial was entered. The trial court did not rule
on the question. I conclude we should not.

BLACK, J., concurred with T. M. KAVANAGH, C. J.

SOURIS, J. (*concurring in result*). I agree that,
upon the facts presented by this record, the circuit
judge reached the correct result in this case of
Bercaw. Appellant Western Tablet & Stationery
Corporation argues on appeal that it was the ulti-
mate assignee of plaintiff Bercaw's employment con-
tract with Allied Paper Corporation; that under the
terms of the employment contract, Bercaw was not
entitled to any compensation if he worked, during a
specified period, for a competitor of any assignee of
his employment contract; and that Bercaw did, dur-
ing the specified period, work for Allied Paper Cor-

poration, a competitor of appellant, and, thus, is entitled to no compensation from appellant under the contract.

There is evidence from which it could have been found that appellant was, indeed, an assignee of Bercaw's employment contract[1] and as such was entitled to any alleged benefits conferred by that contract, such as Bercaw's covenant not to compete. Bercaw's covenant not to compete is quoted in Justice KELLY's opinion, *supra,* at p 502. Appellant argues that, because the employment contract in which the covenant appears was assignable by its express terms, the covenant should be construed to bar Bercaw from employment during its limited term by any competitor of an assignee of the employment contract and that, as assignee of the contract, appellant was entitled to be free from Bercaw's competition as an employee of Allied Paper Corporation, a competitor of appellant.

---

[1] Allied Paper Corporation first assigned the Bercaw contract to its subsidiary, Allied-Albany Paper Corporation. In the course of a business transaction between Allied-Albany and appellant, the following document was executed:

"ASSIGNMENT OF EMPLOYMENT AGREEMENTS

"This assignment entered into this 29th day of December, 1958, between Allied-Albany Paper Corporation, a New York corporation ('Allied-Albany'), and Western Tablet & Stationery Corporation, a Delaware corporation ('Western Tablet').

"Whereas under an agreement dated as of December 10, 1958 (the 'Agreement') Western Tablet has purchased from Allied-Albany all of the assets of the Sharon Division and the Mercury Division of Allied-Albany; and

"Whereas, pursuant to the agreement, Western Tablet has by its letter to Allied-Albany dated December 29, 1958, agreed to hold both Allied-Albany and Allied Paper Corporation harmless from any liability under two employment agreements entered into as of October 21, 1957, between Allied Paper Corporation and Mr. W. R. Bercaw and Mr. Ralph Byington, respectively;

"Now, therefore, in consideration of the making and consummation of the agreement and of said letter dated December 29, 1958, of Western Tablet to Allied-Albany, Allied-Albany hereby assigns to Western Tablet all of its interest in said employment agreements.
"ALLIED-ALBANY PAPER CORPORATION
By: HERMAN C. BERNICK"

However, appellant, in its pleadings, and by the testimony of its president, vehemently denied that it had accepted an assignment of the employment contract.[2] Appellant cannot in its pleadings and at trial assert that it had not accepted an assignment of the Bercaw contract (in which case it would not be entitled to claim any benefits under the assignment, see *Conservative Life Insurance Company* v. *National Exchange Bank of Wheeling* (1936), 118 W Va 44 (188 SE 755), and then on appeal to this Court claim that it was beneficiary of such an assignment. There remains only this letter written by appellant to Allied-Albany Paper Corporation:

"Allied-Albany Paper Corporation
c/o Allied Paper Corporation
Prudential Plaza
Chicago 1, Illinois
*"Dear Sirs:*
"This will confirm that in connection with our agreement dated as of December 10, 1958, you called

---

[2] From appellant's answer: "This defendant denies * * * that this defendant in any way assumed or agreed to be bound by said exhibit A [the Bercaw employment contract] * * * but says this defendant contracted with said seller, Allied-Albany Paper Corporation, only to indemnify and save such company and said defendant, Allied Paper Corporation, harmless from any liability arising under said exhibit A."

From appellant's president's testimony:
"*Q.* When did you first hear about the Bercaw contract with Allied-Albany?
"*A.* It was at the final closing. * * *
"*Q.* And they brought them out, and what did they—what was said to you about them?
"*A.* They wanted us to take them over; assume them.
"*Q.* Did you look at the contracts then?
"*A.* Oh, yes.
"*Q.* And did you make a decision about that at that time?
"*A.* Yes. Said we would not assume them. * * *
"*Q.* * * * did you inform Mr. Bernick or the attorneys or anyone representing Allied-Albany at that time that the Western Tablet would become a party to that—
"*A.* No.
"*Q.* —Agreement?
"*A.* Absolutely not.
"*Q.* You simply *agreed to hold them harmless from liability?*
"*A.* That's right."

to our attention letter agreements dated October 21, 1957 entered into by Allied Paper Corporation with W. R. Bercaw and Ralph Byington, respectively, and the assignment of said agreements by Allied Paper Corporation to you.

"In consideration of the making and consummation of our said agreement, we have undertaken to hold you and Allied Paper Corporation harmless from any liability to either of said persons arising under said agreements from and after December 29, 1958.

> "Yours very truly,
> "WESTERN TABLET & STATIONERY
>   CORPORATION
> "By: E. C. DICKERSON"

Under this indemnity agreement, there can be no doubt of appellant's liability to Allied, if Allied were liable to Bercaw under the employment contract. Since, as the circuit judge correctly found, Allied was liable to Bercaw under the employment contract, appellant was in turn liable to Allied under terms of the indemnity agreement.

I do not believe we should consider appellant's contention that Bercaw may not claim under his employment contract because that contract was intended to effectuate a tax evasion scheme. The issue was not pleaded properly and timely nor was it considered and decided by the circuit judge. See GCR 1963, 118 and 301.

SMITH and ADAMS, JJ., concurred with SOURIS, J.